[No. 18521-4-III.   Division Three.   October 5, 2000.]

SARAH SPENCE, *Respondent*, v. MICHAEL S. KAMINSKI, *Appellant*.

*Michael T. Schein* and *Douglas W. Ahrens* (of *Maltman, Reed, North, Ahrens & Malnati, P.S.*), for appellant.

*Peter D. Nansen* (of *Nansen & Nansen*), for respondent.

SCHULTHEIS, J. — After notice and a hearing to investigate allegations of domestic violence, an Okanogan County Superior Court judge issued a permanent order restraining Michael Kaminski from contacting or getting near his ex-wife, Sarah Spence. RCW 26.50.030, .060. Mr. Kaminski appeals, contending the order violates statutory and constitutional law because it is not based on a recent act of domestic violence. Because we find that neither the United States Constitution nor the relevant state statutes require a recent act of domestic violence, we affirm.

## FACTS

Ms. Spence petitioned the court in May 1999 for an order of protection from Mr. Kaminski. In the standard form petition she stated that Mr. Kaminski

> has stalked, tresspassed [sic] & harassed me since January 1993. He had made death threats[: "]Its [sic] $50 & an airplane ticket when I'm ready to get rid of you."
>
> The recent closure of my Mother's estate was closely followed by custodial interference (often threatened but never this aggressive) [and he] has me in fear that he is ready to act on other threats.

Ms. Spence also sought to restrain Mr. Kaminski from contacting their daughter, who was in Ms. Spence's primary custody.

At the hearing two weeks later, Mr. Kaminski appeared with counsel. Ms. Spence, appearing pro se, presented the court with numerous declarations from witnesses who stated that they had seen Mr. Kaminski threaten Ms. Spence or that they had observed Ms. Spence's fear of Mr. Kaminski. Ms. Spence also presented evidence that her ex-husband had interfered with custody and had frightened their daughter. None of the events described in the decla-

rations—with the exception of the custodial interference—appear to have occurred within the past few years. Most of Ms. Spence's testimony rehashed violence that had occurred during the marriage and dissolution proceedings five years earlier. More recently, she testified, he had made harassing telephone calls to her. He had also put his fist through his daughter's bedroom door, although not in Ms. Spence's presence.

Noting that the parties were currently seeking modification of their parenting plan in Skagit County, the Okanogan court refused to grant a protection order for the daughter and advised Ms. Spence to address allegations of child abuse or neglect in the Skagit modification hearing. The court then turned its attention to the protection requested for Ms. Spence and declared, "I tend to feel that if a person presents a case that, based on history and recent events, they are afraid of another person, they are afraid of domestic violence, that they can obtain protection for themselves[.]" Ultimately the court found that, although Mr. Kaminski's recent custodial interference might justify a contempt order, it did not amount to domestic violence. On the other hand, the court found, the total history of the couple's relationship, including threats and violence, supported Ms. Spence's conclusion "that she may be in danger." On that basis, the court granted Ms. Spence's request for an order restraining Mr. Kaminski from causing her harm, from contacting her or from coming within a mile of her home.

The amended protection order filed in mid-June 1999 allowed Mr. Kaminski limited contact as required for visitation under the Skagit County parenting plan and did not include the one-mile restriction. The standard form order includes the following language handwritten by the court: "the long history of allegations back to . . . 1992 have been investigated by law enforcement[,] ICPS or others. All this court can determine is that Mr. Kaminski has threatened Ms. Spence in the past and she is afraid of him." The court checked the box indicating that the order for protection is

permanent. Directly under this statement the order form includes the following preprinted language: "If the duration of this order exceeds one year, the court finds that an order of less than one year will be insufficient to prevent further acts of domestic violence." Mr. Kaminski immediately appealed to this court.

## DOES A PERMANENT RESTRAINING ORDER REQUIRE A RECENT ACT OF VIOLENCE?

Mr. Kaminski contends the trial court's findings are insufficient to support a permanent order for protection. In particular, he argues that the Legislature intended to require that such orders be based on a recent act of domestic violence.

The Domestic Violence Prevention Act, chapter 26.50 RCW, authorizes a victim of domestic violence to petition the court for an order for protection. RCW 26.50.030. The petition for relief must allege "the existence of domestic violence" and must be accompanied by an affidavit under oath that states specific facts and circumstances supporting relief. RCW 26.50.030(1). "Domestic violence" is defined in part as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members[.]" RCW 26.50.010(1). Noting that victims of domestic violence often have difficulty completing the petition paperwork, the Legislature in 1992 called for refinements in standard petition forms "so that victims have the easy, quick, and effective access to the court system envisioned at the time the protection order process was first created." LAWS OF 1992, ch. 111, § 1 (restated in LAWS OF 1993, ch. 350, § 1). To that end, the administrator for the courts was directed to develop instructions, informational brochures, standard petitions, and standard "order for protection" forms consistent with the statute. RCW 26.50.035.

Ms. Spence's standard form petition for relief indicates that Mr. Kaminski had stalked, trespassed, and harassed

her since 1993. She also states that she recently became fearful after the closure of her mother's estate and her ex-husband's subsequent custodial interference—"often threatened but never this aggressive." The handwritten statement of facts on the petition form, while not formally made "under oath," is followed by her signature and the statement, "I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct." The petition was accompanied by numerous declarations from witnesses and the record from the dissolution proceedings and custody disputes from Skagit County. In all, the petition and supporting documents meet the threshold requirements of RCW 26.50.030 and justify the court's decision to set a hearing for the protection order.

■■ RCW 26.50.060 authorizes the trial court, after notice and a hearing, to issue a protection order. *City of Seattle v. Edwards*, 87 Wn. App. 305, 310, 941 P.2d 697 (1997). Among other forms of relief, the court may restrain the respondent from committing domestic violence, from entering the residence or workplace of the petitioner, and from making contact with the petitioner. RCW 26.50.060(1). If the court finds that the respondent "is likely to resume acts of domestic violence against the petitioner . . . when the order expires," the court has discretion to enter a permanent order of protection. RCW 26.50.060(2). The statute does not require any particular wording in the order. *Edwards*, 87 Wn. App. at 310. Beyond specifying the types of relief provided, the order is required only to specify the date it expires (if at all), the type and date of service of process used, and a notice of the criminal penalties resulting from violation of the order. RCW 26.50.035(1)(c), .060(6). On the other hand, if the court declines to issue an order for protection, it must "state in writing on the order the particular reasons for the court's denial." RCW 26.50.060(7).

Mr. Kaminski contends the order for protection contains insufficient findings to support the conclusion that a permanent order is called for. Citing *In re Detention of LaBelle*,

107 Wn.2d 196, 728 P.2d 138 (1986), he argues that preprinted findings on a form are insufficient to indicate the factual basis for the court's conclusions. The statutory basis for the decision in *LaBelle*, an involuntary commitment case, is distinguishable.

Chapter 71.05 RCW, the commitment statute interpreted in *LaBelle*, authorizes involuntary confinement for those individuals who pose a substantial risk of harm to themselves or to others or who are gravely disabled. *LaBelle*, 107 Wn.2d at 201-02. Noting that involuntary confinement is a " 'massive curtailment of liberty,' " the court concluded that due process requires sufficiently specific findings to support review of such an order. *Id.* at 201 (quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)), 218. The commitment order in *LaBelle* stated only that clear and cogent evidence showed the respondent was gravely disabled. This finding, the court held, did not indicate the factual bases for the ultimate conclusion and did not show which alternative statutory definition of gravely disabled was relied on by the trial court. *Id.* at 219. However, the court also found that inadequate findings may be supplemented by the trial court's oral decision or statements on the record. *Id.*

Unlike the involuntary commitment statute in *LaBelle*, the protection order authorized by chapter 26.50 RCW does not result in a massive curtailment of Mr. Kaminski's liberty. The final amended order issued to protect Ms. Spence restrains Mr. Kaminski from committing acts of domestic violence against her, from contacting her except when arranging visitation for their child, and from entering her residence. None of these restrictions are unreasonable if based on a demonstrated need to protect Ms. Spence from domestic violence. In a section on the preprinted form named "OTHER," the court found that the long history of domestic abuse supports the conclusion that Mr. Kaminski has threatened Ms. Spence in the past and that she continues to be afraid of him. This language indicates that the court relied on the "infliction of fear of

imminent physical harm" alternative definition of domestic violence. RCW 26.50.010(1). While much of the evidence presented at the hearing concerned past acts and threats, the court found that the continuing relationship of the parties, who still struggled over custody issues, presented ongoing opportunities for conflict. Additionally, the court stated at the hearing that Ms. Spence exhibited fear of her ex-husband. Her credibility is not reviewable by this court. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The history of abuse and the court's belief that Ms. Spence fears future abuse are sufficient to persuade a rational person that she had been put in fear of imminent physical harm.[1]

But Mr. Kaminski contends more than a history of domestic abuse is required. He argues that the statute implicitly requires proof of a recent act of domestic abuse, which is missing in this case. Without a recent act, he asserts, there is no abuser and no victim who needs protection. Neither the language of the statute nor legislative intent supports this requirement.

Under the general principles of statutory construction, the court's fundamental duty is to ascertain and carry out the intent of the Legislature. *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). An unambiguous statute is not subject to judicial interpretation, and the statute's meaning is derived solely from its language. *Id.* The court may not add language to a clearly worded statute, even if it believes the Legislature intended more. *Id.* Statutes are construed as a whole, giving effect to each provision. *State v. Merritt*, 91 Wn. App. 969, 973, 961 P.2d 958 (1998).

Facially, the provisions of chapter 26.50 RCW regarding

---

[1] Mr. Kaminski's assertion that the trial court found no abuse is a misreading of the record. In discussing its decision to deny a protection order for the child, the court noted that while Mr. Kaminski's custodial interference might constitute contempt, it did not indicate there had been abuse of the child. The court cancelled visitation until the Skagit County court entered a new parenting plan and stated, "I am making this order, even though I cannot show that there has been abuse." In the context, it is clear that the trial court was referring solely to abuse of the child.

the issuance of a permanent order for protection are not ambiguous. The petition must allege that the victim "has been the victim of domestic violence," RCW 26.50.020(1), defined in part as the "infliction of fear of imminent physical harm," RCW 26.50.010(1). Nothing in these provisions requires a recent act of domestic violence. On the other hand, in the temporary protection order statute, RCW 26.50.070, the application must allege that an immediate order is necessary to protect against "irreparable injury[.]" RCW 26.50.070(1). Irreparable injury includes situations in which the respondent "has recently threatened petitioner with bodily injury[.]" RCW 26.50.070(2). The temporary protection order is issued ex parte, without the notice and hearing found in the permanent or fixed-time protection order processes that protect the respondent's due process rights. The immediacy of the threat to the victim justifies a temporary infringement on the constitutional rights of the alleged abuser. RCW 26.50.070(4) (the temporary order shall be effective for a fixed period of not longer than 14 days, or 24 days if notice was served by publication or mail, and a full hearing is required at the end of that period). The process for issuing a permanent protection order provides adequate notice and ability to be heard. RCW 26.50.060. In light of the Legislature's intent to intervene *before* injury occurs,[2] and in recognition that RCW 26.50.020 and RCW 26.50.060 do not require an allegation of recent domestic violence, we decline to read into these statutes a requirement of a recent violent act.

Mr. Kaminski last contends that the failure to allege a recent act of domestic violence violates due process, equal protection, and the First Amendment. Throughout his argument, he suggests that the trial court's failure to find a recent act constitutes failure to find *any* act of domestic violence. On the contrary, the trial court here found that Mr. Kaminski had committed domestic violence in the past,

---

[2] *See State v. Dejarlais*, 136 Wn.2d 939, 944, 969 P.2d 90 (1998) (chapter 26.50 RCW reflects the Legislature's belief that the public has an interest in preventing domestic violence).

including threats of violence, and found that Ms. Spence had been the victim of that violence. RCW 26.50.020(1). A close examination of his argument leads to the conclusion that a permanent protection order based on these findings violates no constitutional rights:

■■ I. Due Process. Determining the degree of procedural due process afforded in a particular case requires a balancing of the private interest to be protected, the risk of erroneous deprivation of that interest, and the government's interest in maintaining the procedures. *State v. Lee*, 82 Wn. App. 298, 312-13, 917 P.2d 159 (1996) (citing *Morris v. Blaker*, 118 Wn.2d 133, 144-45, 821 P.2d 482 (1992)), *aff'd*, 135 Wn.2d 369, 957 P.2d 741 (1998). As discussed above, the protection order here does not intrude on a substantial privacy interest of Mr. Kaminski. The hearing investigating the history of domestic violence and the credibility of Ms. Spence's fear of future violence creates minimal risk that Mr. Kaminski's liberty would be erroneously deprived. Finally, the Legislature has shown that it has a strong interest in preventing domestic violence. A requirement that the victim must wait until further threatened acts actually occur before seeking a protection order would undermine that intent.

■■ II. Equal Protection. The principle of equal protection requires that all persons similarly situated with respect to the legitimate purposes of the law must receive like treatment. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 972, 977 P.2d 554 (1999). Mr. Kaminski contends that the court's failure to find a recent act of domestic violence prevents the court from recognizing a basis to logically distinguish between those who should have an order entered against them and those who should not. His argument essentially challenges the sufficiency of the evidence, which was discussed above. Further, the legitimate purpose of the Domestic Violence Prevention Act—to prevent domestic violence—is rationally related to the issuance of a protection order based on a respondent's history of domestic

violence and the petitioner's demonstrated fear of future acts of domestic violence.

**III. First Amendment.** The freedom to travel is a First Amendment protected liberty interest. *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 135 Wn.2d 618, 647, 957 P.2d 691 (1998) (Talmadge, J., concurring). But that freedom of movement cannot be used to impair the individual rights of others. *Lee*, 135 Wn.2d at 390. As with the stalking statute, RCW 9A.46.110, the protection order of chapter 26.50 RCW curtails an abuser's right to move about when such movement is harmful or illegal and interferes with the victim's right to be free of invasive, oppressive and harmful behavior. *Lee*, 135 Wn.2d at 391-92. The protection order does not interfere with Mr. Kaminski's legitimate freedom of movement or right to travel. It, like the stalking statute, is a reasonable exercise of police power requiring one person's freedom of movement to give way to another person's freedom not to be disturbed. *Id.* at 392.

Affirmed.

BROWN, A.C.J., and KATO, J., concur.