# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )

FANAYE ASHAGARI, )

          Respondent, )

          and )

ZELEKE KASSAHUN, )

          Appellant. )

No. 71295-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 23, 2015

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2015 MAR 23 AM 11: 30
FILED

TRICKEY, J. — Zeleke Kassahun appeals from the decree of dissolution, parenting plan, findings of fact and conclusions of law, and several related orders entered following trial. Because the record supports the trial court's finding that Kassahun's assault on his wife "was not an isolated incident" of domestic violence, we affirm the RCW 26.09.191 restrictions in the parenting plan. We also affirm the entry of a permanent protection order as there is a reasonable likelihood of the resumption of domestic violence. However, we agree with Kassahun's contention that the trial court did not adequately explain its method in calculating his gross monthly income for purposes of establishing the child support and maintenance awards. On this ground, we remand to the trial court for further findings concerning Kassahun's gross monthly income.

## FACTS

Kassahun was born in Ethiopia. In 1986, he moved to Seattle to live with his former wife to whom he was married between 1980 and 1989. He found work driving a taxicab until he purchased a Texaco gas station in 1991.

Fanaye Ashagari was also born in Ethiopia and completed high school there. She came to the United States in March 1995 and found work at a fast food restaurant. In January 1996, Ashagari married her former husband. They divorced in January 1997. Shortly after her divorce, Kassahun hired her to work at his gas station as a cashier. They began a romantic relationship and, in January 1998, they were married. The parties have three children. Ashagari did not return to work outside the home after their first child was born in 2001.

Kassahun was the sole provider for the family and controlled Ashagari's spending. He did not permit Ashagari to have money except for small amounts for personal expenses. One month before they married, they opened a joint bank account. Ashagari had no access to the account, however. Only after 2006 did Kassahun allow Ashagari to write checks from the account to pay the bills. Kassahun did not permit Ashagari to open a bill unless he needed her to sign it, in which case he required her to sign the document in his presence.

The parties bought a home together in 1999. They purchased a taxicab license in 2000. In 2002, they acquired the Abyssinia Market, which Kassahun operates. They purchased several cars throughout the marriage, including luxury cars such as a Lexus and Mercedes-Benz. Over the years they were able to save a large sum of money. In 2011, unbeknown to Ashagari, Kassahun withdrew $187,000 from the joint bank account and invested $180,000 in another taxicab license.

Kassahun paid himself a modest salary from his work at the Abyssinia Market. His tax returns reflected the paychecks he wrote to himself from the business account as well as his income from one of the taxicabs. He reported an income from the taxicab

licenses of less than $1,000 a year. But at trial, Kassahun claimed to receive $1,000 each month per taxicab, paid in cash. He provided no documented proof of this income and stated that he does not keep records of the income.

Kassahun paid some of the family's personal expenses from the Abyssinia Market business account. He issued checks to himself from the business's bank account, which he either deposited in the joint bank account or his personal account, or cashed. Kassahun used his business's credit cards for personal expenses and paid thousands of dollars each month on the running balances. In addition, Kassahun withdrew cash from the business account and from unrecorded cash sales to pay personal expenses.

Kassahun and Ashagari separated on September 16, 2011. Kassahun continued to pay the household expenses. On July 5, 2012, Ashagari filed a petition for dissolution, a petition for an ex parte restraining order, and a petition for order of protection. Kassahun ceased paying the household expenses once Ashagari filed these petitions. The trial court subsequently entered an ex parte restraining order and a temporary protection order.

Jennifer Bercot of Family Court Services conducted an extensive parenting plan evaluation. Based on her evaluation, she recommended parenting restrictions under RCW 26.09.191 due to Kassahun's history of domestic violence and long-term impairment resulting from his alcohol abuse. Bercot interviewed Kassahun, Ashagari, and several of their collateral contacts.

In Bercot's interview with Ashagari, Ashagari reported that Kassahun would occasionally stay up all night drinking at their house. Ashagari feared that he would kill

her, and she continued to be fearful of Kassahun even after their separation. When asked to describe the last incident of physical force, Ashagari replied that at the end of 2010, on New Year's Eve, Kassahun was intoxicated and attempted to hit her with a bottle. When their son intervened, Kassahun acted aggressively toward him. Ashagari went between the two of them and Kassahun began to hit her on the face. Ashagari described several more occasions in which Kassahun was physically abusive toward her.

In addition, according to Ashagari, Kassahun threatened to kill her numerous times throughout their marriage. He would point his arm at Ashagari like he was shooting a gun at her tell her that he wished to kill her. On one occasion, while she was videotaping him, Kassahun said to her, "'you deserve to be fried with a bullet.'"[1] Kassahun admitted that he made this threat to Ashagari.

Moreover, Ashagari's brother, who had lived with the family for some time, told Bercot that Ashagari was scared of Kassahun because Kassahun had hurt her and because Kassahun "'gets so crazy when he's drinking.'"[2] Ashagari's sister reported that there were times when Ashagari would take the children to her house because Kassahun threatened to kill Ashagari and she was frightened of him.

At trial, Ashagari related several additional incidents in which Kassahun became physically and verbally abusive toward her throughout their marriage. For example, prior to their marriage in 1998, Kassahun assaulted her after she told him about her abusive relationship with her former husband. Soon after they were married, Kassahun began to drink more. On one occasion, Kassahun was angry and hit and broke a glass

---

[1] Exhibit (Ex.) 1 at 7.
[2] Ex. 1 at 18; 2 Report of Proceedings (RP) at 124.

4

shelf with his hand. Ashagari became fearful of him after this incident. On another occasion in 2000, Kassahun was upset at Ashagari and pushed her down a flight of stairs.

In May 2011, at a birthday party at Siefudin Hassen's house, Kassahun lunged at Ashagari, choked her, and pushed her to the ground. Hassen described the incident at trial. He recalled Kassahun shouting at and insulting Ashagari. Hassen said he and other people attempted to pull Kassahun away from Ashagari when Kassahun attacked her. Ashagari testified that she was afraid of him that night and spent the night with her children at her mother's house. Ashagari added that she was and continued to be fearful of Kassahun because of his threats to kill her and his violent behavior toward her.

Furthermore, when asked about the lethality assessment, Bercot explained that "the lethality risk factors that were present included: [c]hoking, stalking, substance abuse, violence in the presence of the children, violence towards the child, a history of violence. The severity of the violence or the frequency for duration was significant, sort of obsessive types of behaviors, threats to kill the mother."[3] Kassahun's therapist at Wellspring Family Services' domestic violence treatment program testified that based on Kassahun's self-report and work he does in the program, it was probable that Kassahun had battered Ashagari.

The trial court concluded that RCW 26.09.191 restrictions were appropriate based on Kassahun's history of acts of domestic violence. The trial court ordered Kassahun to pay maintenance for a period of four years and $1,347.72 in monthly child

---

[3] 2 RP at 133.

support. The trial court additionally entered a permanent order of protection, identifying Ashagari as the protected party.

Kassahun appeals.

## ANALYSIS

### Parenting Plan

Kassahun contends the trial court misapplied the legal requirements of RCW 26.09.191(1)(c) because, he asserts, its finding that he engaged in "a history of acts of domestic violence," as required by the statute, was based on only one act of domestic violence. We disagree.

We review a trial court's rulings on the provisions of a parenting plan for abuse of discretion.[4] In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A trial court abuses its discretion if its decision is (1) manifestly unreasonable, (2) based on untenable grounds, or (3) based on untenable reasons. Littlefield, 133 Wn.2d at 46-47. "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard." Littlefield, 133 Wn.2d at 47. A court's decision is based on untenable grounds if the record does not support the factual findings. Littlefield, 133 Wn.2d at 47. Finally, a court's decision is based on untenable reasons if it is "based on an incorrect standard or the facts do not meet the requirements of the correct standard." Littlefield, 133 Wn.2d at 47.

---

[4] Kassahun does not identify any standard of review in his briefing to this court. Nor does he set forth the reason—e.g., a manifestly unreasonable decision—for the alleged abuse of discretion. Kassahun does not argue that the evidence in the record does not support the trial court's findings of fact or that those findings, in turn, do not support the trial court's conclusions of law. His briefing suggests that he argues that the trial court abused its discretion by deciding the terms of the parenting plan on untenable reasons.

RCW 26.09.191(1) and (2) are mandatory provisions requiring the trial court to restrict a parent's time with his or her child and prohibit mutual decision-making if the court finds that a parent has engaged in a history of acts of domestic violence or an assault that "causes grievous bodily harm or the fear of such harm." RCW 26.09.191.191(1)(c), (2)(a)(iii).

"Domestic violence," as defined in RCW 26.50.010(1)(a), means

(a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

Although RCW 26.09.191 does not define "'a history of acts of domestic violence,'" the phrase excludes "'isolated, de minimus incidents which could technically be defined as domestic violence.'" In re Marriage of C.M.C., 87 Wn. App. 84, 88, 940 P.2d 669 (1997) (quoting former RCW 26.50.010(1) (1987)). "Mere accusations, without proof, are not sufficient to invoke the restrictions under [RCW 26.09.191.]" Caven v. Caven, 136 Wn.2d 800, 809, 966 P.2d 1247 (1998).

Here, the trial court found:

There is a history of domestic violence and a basis for RCW 26.09.191 restrictions.

The father had the mother followed, and monitored her phone records. The court finds that father assaulted the mother at the birthday party in 2011, and that **this was not an isolated incident**. The evidence presented at trial satisfies the statutory definition of domestic violence.[5]

Kassahun contends that the trial court erroneously relied on a single act of domestic violence, rather than more than one act as required by RCW 26.09.191(1)(c)

---

[5] Clerk's Papers (CP) at 472 (emphasis added).

and (2)(a)(iii) (requiring "a history of acts of domestic violence") (emphasis added). He argues that the trial court's reference to only one act of domestic violence—the birthday party incident—is legally insufficient to meet the statutory requirement and that, therefore, the trial court applied an incorrect legal standard. But the trial court did not misapply the law. It found that there were additional incidents of domestic violence by noting that the birthday party incident was "not an isolated" one.[6]

Nevertheless, relying on Katare v. Katare, 125 Wn. App. 813, 105 P.3d 44 (2004), and In re LaBelle, 107 Wn.2d 196, 728 P.2d 138 (1986), Kassahun argues that the trial court erred by failing to make sufficiently specific findings to support its determination that the birthday party assault "was not an isolated incident" of domestic abuse.[7] We disagree.

The trial court may not impose restrictions in a parenting plan without making express findings under RCW 26.09.191. Katare, 125 Wn. App. at 826. "Generally, where findings are required, they must be sufficiently specific to permit meaningful review." LaBelle, 107 Wn.2d at 218. The findings must sufficiently indicate the factual bases for the trial court's ultimate conclusions. LaBelle, 107 Wn.2d at 218. "The purpose of the requirement of findings and conclusions is to insure the trial judge has dealt fully and properly with all the issues in the case before he decides it and so that the parties involved and this court on appeal may be fully informed as to the bases of his decision when it is made." LaBelle, 107 Wn.2d at 218-19 (internal quotation marks omitted) (quoting State v. Agee, 89 Wn.2d 416, 421, 573 P.2d 355 (1977)). "The degree of particularity of the findings will depend on the circumstances of the particular

---

[6] CP at 472.
[7] CP at 472.

case." LaBelle, 107 Wn.2d at 220. But a trial court need not make findings on all matters about which there is evidence in the record; rather, the trial court must only make findings that "establish the existence or nonexistence of determinative factual matters." LaBelle, 107 Wn.2d at 219.

Kassahun's reliance on Katare and LeBelle is unavailing. Contrary to Kassahun's contention, these decisions do not compel a trial court to enumerate every specific act of domestic violence that forms the basis of its finding. Indeed, here, the trial court expressly found and sufficiently indicated the basis to impose restrictions pursuant to RCW 26.09.191—namely, it determined that Kassahun engaged in a history of acts of domestic violence. The court also referenced evidence from the record in support of its finding that there was a history of acts of domestic violence or that Kassahun assaulted Ashagari. Specifically, the court noted, "The father had the mother followed, and monitored her phone records. The court finds that father assaulted the mother at the birthday party in 2011, and that this was not an isolated incident."[8] The trial court did not abuse its discretion by omitting mention of specific events that constituted individual acts of domestic violence.[9]

Moreover, even if the trial court had only considered the birthday party incident, that incident constitutes an act of assault sufficient to meet the statutory requirement under RCW 26.09.191. Pursuant to these subsections, parenting limitations are mandatory if a parent has conducted "an assault or sexual assault which causes

---

[8] CP at 472.

[9] Furthermore, to the extent Kassahun argues to the contrary, the record amply supports the finding that the birthday party incident was not the sole act of domestic violence engaged in by Kassahun. Ashagari presented abundant evidence—including her own testimony and that of others—of incidents of domestic violence in addition to the birthday party altercation, as well as evidence that Kassahun inflicted fear of imminent physical harm on Ashagari.

9

grievous bodily harm or the fear of such harm." RCW 26.09.191(1)(c), (2)(a)(iii). Ashagari testified that she was fearful of her husband after the assault at the birthday party and, as a result, she spent the night at her mother's house. She also provided ample testimony describing her ongoing fear of Kassahun.

The trial court did not abuse its discretion in finding that Kassahun engaged in a pattern of acts of domestic violence or assaulted Ashagari. Accordingly, the trial court did not err in imposing parenting restrictions under RCW 26.09.191.

<u>Permanent Protection Order</u>

Kassahun contends that the trial court erred by entering a permanent protection order because, he argues, there was no evidence that there was a present likelihood of recurrence of imminent harm. We disagree.

This court reviews a decision to grant, modify, renew, or terminate a protection order for abuse of discretion. <u>In re Marriage of Freeman</u>, 169 Wn.2d 664, 671, 239 P.3d 557 (2010) (quoting RCW 26.50.060(2), (3), .130(1)).

At its oral ruling, the trial court found that "acts of domestic violence are likely to resume."[10] Kassahun appears to argue that no evidence supported the trial court's finding that he is likely to resume acts of domestic violence. Kassahun asserts that Ashagari continued to live with him after the assault at the birthday party in May 2011, and that there were no alleged incidents of domestic violence after the parties separated. But the record belies Kassahun's contention.

If the trial court "finds that the respondent is likely to resume acts of domestic violence against the petitioner," the court has discretion to enter a permanent protection

---

[10] 10 RP at 954.

order. RCW 26.50.060(2). The petitioner need not show a recent act of domestic violence; a trial court may issue a permanent protection order if the present likelihood of a recurrence is reasonable. Freeman, 169 Wn.2d at 674-75 (citing Spence v. Kaminski, 103 Wn. App. 325, 333, 12 P.3d 1030 (2000); Barber v. Barber, 136 Wn. App. 512, 513, 516, 150 P.3d 124 (2007)). Ashagari made such a showing here. As our Supreme Court in Freeman pointed out, in Spence and Barber, Court of Appeals decisions that upheld permanent protection orders, the victims had ongoing relationships with their abusers. Freeman, 169 Wn.2d at 675. Here, the parties' relationship with one another will continue after the dissolution as they deal with custody issues. The evidence demonstrated a likelihood that Kassahun would resume acts of domestic violence against Ashagari without a protection order in place.

Next, Kassahun contends that the trial court's finding that "[t]he domestic violence [o]rder for [p]rotection signed by the court on this date shall be permanent," is legally insufficient.[11] But under LaBelle, this finding may "be supplemented by the trial court's oral decision or statements in the record." 107 Wn.2d at 219. Here, the trial court's oral ruling—namely, "that acts of domestic violence are likely to resume"—sufficiently explained the basis for entry of the permanent order of protection.[12] Furthermore, RCW 26.50.060 does not require any particular wording in the protection order. Spence, 103 Wn. App. at 331 (citing Seattle v. Edwards, 87 Wn. App. 305, 310, 941 P.2d 697 (1997)). "Beyond specifying the types of relief provided, the order is required only to specify the date it expires (if at all), the type and date of service of process used, and a notice of the criminal penalties resulting from violation of the

---

[11] CP at 471.
[12] 10 RP at 954.

order." Spence, 103 Wn. App. at 331. The trial court complied with the statutory requirements here. Its finding that Kassahun is likely to resume acts of domestic violence is sufficient under the statute.

## Child Support and Maintenance

Kassahun challenges the trial court's calculation of his monthly gross income for purposes of the child support and maintenance awards. He contends that the trial court's finding on his gross monthly income was not supported by substantial evidence.

We review a trial court's dissolution orders, including orders awarding child support and maintenance, for abuse of discretion. In re Marriage of MacDonald, 104 Wn.2d 745, 751, 709 P.2d 1196 (1985).

"RCW 26.19.071(1) does not require that the court make a precise determination of income. Instead, the court is required to consider all income and resources of each parent's household." In re Marriage of Marzetta, 129 Wn. App. 607, 623, 120 P.3d 75 (2005), abrogated on another ground by In re Marriage of McCausland, 159 Wn.2d 607, 619, 152 P.3d 1013 (2007). "We must presume that the court considered all evidence before it in fashioning the order." In re Marriage of Kelly, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997).

"All income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent." RCW 26.19.071(1). "[M]onthly gross income shall include income from any source," including salaries, wages, deferred compensation, dividends, interest, bonuses, income from a business. RCW 26.19.071(3).

Here, even though Ashagari never argued that Kassahun's gross annual income was greater than $11,000, the trial court found that Kassahun earned a gross monthly income of $13,750.

The parties presented a significant number of exhibits and documents in the record to prove their financial status over recent years. The evidence included financial declarations by both parties, bank account statements, credit card statements, copies of checks issued from Abyssinia Market's bank account, and tax returns.

The trial court did not rely on the tax returns in its attempt to calculate Kassahun's gross monthly income. The court found that those documents were not credible because, compared to the significant expenses each month, it was not possible Kassahun earned this relatively small amount. But the court's oral ruling explaining its method in determining Kassahun's gross monthly income is unclear. And we are unable to arrive at this numerical finding based on the record before us, even when discounting the evidence the trial court found not credible. Because we cannot discern the basis on which the trial court calculated Kassahun's monthly gross income, we are unable to determine whether substantial evidence supported this finding. See In re LaBelle, 107 Wn.2d at 218 ("Generally, where findings are required, they must be sufficiently specific to permit meaningful review.").

Kassahun additionally assigns error to the trial court's maintenance award, arguing that the court failed to weigh the statutory factors set forth in RCW 26.09.090. Specifically, Kassahun argues that substantial evidence did not support the court's findings that he (1) "has an earning capacity and financial resources that greatly exceed

what he claims and which is sufficient to support Ms. Ashagari," and (2) has the ability "to meet his financial obligations while meeting those of the spouse."[13]

The trial court has broad discretion to award spousal maintenance. Bulicek v. Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). The nonexclusive list of statutory factors includes the parties' postdissolution financial resources; the ability of one spouse to pay maintenance to the other; the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; the standard of living during the marriage; the duration of the marriage; and the time needed to acquire education necessary to obtain employment. RCW 26.09.090(1); In re Marriage of Vander Veen, 62 Wn. App. 861, 867, 815 P.2d 843 (1991).

With regard to Kassahun's challenge to the child support award, we are unable to determine whether substantial evidence supported the disputed findings without adequate findings concerning Kassahun's gross monthly income.

We remand with instructions that the trial court enter more specific findings on existing evidence regarding its calculation of Kassahun's gross monthly income. If necessary, the trial court should recalculate Kassahun's income and maintenance and support obligations.

Attorney Fees

Citing to RCW 26.09.140, Ashagari requests an award of attorney fees on appeal for defending against Kassahun's claims relating to the parenting restrictions and the

---

[13] CP at 471.

permanent protection order. Ashagari is represented by the Northwest Justice Project, a nonprofit, publically funded legal services provider. Ashagari has received legal services free of charge, and has agreed to assign any attorney fees recovered on appeal to the Northwest Justice Project. A nonprofit legal services corporation that successfully wins an appeal on behalf of an appellant is entitled to attorney fees, even where the represented party has not incurred any expenses in the litigation. Tofte v. Dep't of Soc. & Health Servs., 85 Wn.2d 161, 531 P.2d 808 (1975). RCW 26.09.140 provides for fees on appeal. Under this statute, the court may order a party to pay a "reasonable amount" of the costs and attorney fees of the other party "after considering the financial resources of both parties." RCW 26.09.140.

In exercising our discretion under the statute, we consider the arguable merit of the issues on appeal and the parties' financial resources. C.M.C., 87 Wn. App. at 89. Having done so, we grant Ashagari attorney fees and costs on appeal under RCW 26.09.140.

## CONCLUSION

We remand to the trial court for further findings on the calculation of Kassahun's gross monthly income. In all other respects, we affirm. We grant Ashagari's request for attorney fees on appeal.[14]

_Trickey, J_

WE CONCUR:

---

[14] Kassahun submitted a motion to this court to permit the trial court to vacate a provision of the maintenance order rendering the maintenance award "non-modifiable." Because we remand to the trial court for supplemental findings, we reserve this issue to the discretion of the trial court.