IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ESMERALDA RODRIGUEZ, | ) | |
| | ) | No. 33649-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS DANIEL ZAVALA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — The trial court granted Esmeralda Rodriguez a domestic violence protection order restraining her former boyfriend, Luis Daniel Zavala, from contact with her or her three daughters. The trial court refused to include the parties' male minor child Lazaro as a protected party under the order. Lazaro is a fictitious name. The court found that Lazaro was not threatened or the subject of abuse. The trial court also refused to enter residential provisions restricting Zavala's access to Lazaro. Rodriguez appeals both rulings. We hold that the trial court did not abuse its discretion and affirm both rulings.

FACTS

Petitioner Esmeralda Rodriguez dated respondent Luis Zavala. The couple had

one son in common, Lazaro. Lazaro was two years old in June 2015, the month that Rodriguez sought a protection order. Rodriguez also raised three daughters, born from an earlier relationship. During the relationship between Rodriguez and Zavala, Zavala repeatedly physically assaulted Esmeralda Rodriguez, threatened to kidnap Lazaro, and threatened to kill Rodriguez, her children, and himself.

Events in the early morning of June 14, 2015, precipitated the entry of a second domestic violence protection order favoring Esmerelda Rodriguez. We do not know when the first order was entered or the basis for the first order. On June 14, at 2 a.m., in violation of the existing no contact order, Luis Zavala appeared at Rodriguez's house and forcibly entered the home. He was drunk, sleep deprived, or both and wanted to talk to Lazaro. Rodriguez ordered Zavala to leave the premises or she would call the police. Zavala cornered Rodriguez and choked her. He threatened to end what he had started. Rodriguez yelled for a daughter to call 911. Rodriguez, in fear for her life, stabbed Zavala in the stomach with a knife.

## PROCEDURE

On June 16, 2015, Esmeralda Rodriguez filed another petition for an order of protection. In the petition, Rodriguez sought a restraint against Luis Zavala from contact with her and her four children and from coming near the family home or any of the children's day care facilities or schools.

2

No. 33649-2-III
*Rodriguez v. Zavala*

Esmerelda Rodriguez's petition documented some of the abuse by Luis Zavala.

Rodriguez averred under oath, as part of the petition:

> Luis has continued to harass me and has made numerous threats to hurt me and my children.

Clerk's Papers (CP) at 4. Rodriguez wrote:

> On June 14th 2015 around 2:00 a.m. I woke up to Luis banging on bedroom window outside. I yelled to Luis to please leave us alone. Luis began to yell at me and demanded I open the door or he would break the window and come inside. I went to the door and opened it a little to tell him to leave and that [I] did not want my daughters to wake up. Luis pushed me away from the door. I told him to leave or if he didn't I would call the police. Luis cornered me to the wall and placed [his] hand on my face trying to choke me. Luis then told me—now [I] am finally going to end what I started. I feared he was going to kill me. I reached for kitchen knife stabbed him in the stomach area. I yelled at my daughter to call 911.
> . . . .
> 2007—When I was pregnant from our son[,] Luis pushed [me] to [the] floor because he was using drugs.
> Luis got on top of me when I was laying on the bed and began to put a pillow over my head preventing me from breathing.
> Luis is always telling me [that I am] at fault with everything going wrong with him.

CP at 5.

> Luis has threatened he is going to [do] something to my daughter so terrible it [is] going to make me want to kill myself.
> Luis has also threaten[ed] to kidnap our so[n] and I would never see him.
> . . . .
> Luis will call numerous times and if I don't answer he will show up to see what I am doing.
> . . . .
> Luis told me that once he is done with us (kill us) he will then kill

3

himself.

. . . .

Luis took a knife and told me [he] would cut me in tiny pieces.

CP at 6.

Due to Luis['] drug use it is best Luis is not allowed any dangerous weapons.

CP at 7.

On the basis of the petition, the trial court entered a temporary order of protection. The temporary order protected all four children, including Lazaro, from contact with Luis Zavala and barred Zavala from coming near the family home or the children's schools or day care centers. The order also scheduled a hearing for a permanent order of protection.

On June 26, 2015, the trial court conducted the hearing for a permanent order. Luis Zavala then resided in jail for violating the earlier restraining order. Law enforcement allowed him to attend the June 26 hearing in person. Zavala admitted entering the home despite the previous entry of a restraining order. Zavala denied injuring Esmerelda Rodriguez and accused her of harming him. According to Zavala, Rodriguez struck him after she saw kiss marks on his neck.

During the June 26 hearing, Esmerelda Rodriguez repeated the events that occurred on June 14. The trial court asked Rodriguez whether Lazaro observed the June 14 assault. Esmerelda Rodriguez answered no and that Lazaro slept through the attack.

4

The trial court found Esmerelda Rodriguez's story more credible than Zavala's response. The trial court entered an order protecting Esmeralda Rodriguez and her three daughters, but not Lazaro. The order restrained Zavala from being near the family residence, Rodriguez's workplace, and the school of any of Rodriguez's daughters. The trial court struck a section of the proposed order that granted Rodriguez custody of the children and prevented visitation until a parenting plan was filed.

At the end of the June 26 hearing, Esmerelda Rodriguez asked the trial court for an order of custody over Lazaro. The trial court denied the request and recommended to Rodriguez that she file a parenting plan.

The domestic violence protection order expired on June 26, 2016.

## LAW AND ANALYSIS

Esmeralda Rodriguez assigns two errors on appeal. First, the trial court erred when refusing to include her son, Lazaro, as a protected party under the domestic violence protection order. Second, the trial court erred when refusing to enter an order with residential provisions when the court entered the protection order. In response, Luis Zavala commented, among other remarks, that he would reside in jail for a long time and he wished not to be contacted again regarding the lawsuit and appeal. Child Justice, Inc. filed an amicus brief in support of Rodriguez's first argument that the trial court should have protected Lazaro under the protection order.

5

No. 33649-2-III
*Rodriguez v. Zavala*

The domestic violence prevention act creates "an action known as a petition for an order for protection in cases of domestic violence." RCW 26.50.030. The operative section of the act, RCW 26.50.020(1)(a), provides:

> Any person may seek relief under this chapter by filing a petition with a court alleging that the person has been the victim of domestic violence committed by the respondent. The person may petition for relief on behalf of himself or herself and on behalf of minor family or household members.

Thus, Esmerelda Rodriguez could file her petition for protection on behalf of herself, her daughters, and Lazaro. The petition must be accompanied by a sworn affidavit, setting forth the facts supporting the request for relief. RCW 26.50.020(1); RCW 26.50.030(1); *State v. Karas*, 108 Wn. App. 692, 697, 32 P.3d 1016 (2001).

The domestic violence prevention act covers Esmerelda Rodriguez, her daughters, and Lazaro from violence imposed by Luis Zavala. The act covers domestic violence between family or household members:

> "Domestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

RCW 26.50.010(1). In turn, "family or household members" means:

> . . . spouses, domestic partners, former spouses, former domestic partners, persons who have a child in common regardless of whether they have been married or have lived together at any time . . . and persons who

6

> have a biological or legal parent-child relationship, including stepparents
> and stepchildren and grandparents and grandchildren.

RCW 26.50.010(2). An order may restrict contact between a parent and child, in which

case the restraint may not exceed a maximum period of one year. RCW 26.50.060(2).

RCW 26.50.060 authorizes the trial court, after notice and a hearing, to issue a

protection order. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). The

court may restrain the respondent from committing domestic violence, from entering the

petitioner's residence or workplace, from entering a child's school or day care center, and

from contacting the petitioner. RCW 26.50.060(1); *Spence v. Kaminski*, 103 Wn. App.

325, 331, 12 P.3d 1030 (2000).

The trial court holds discretion when entertaining petitions for domestic violence

protection orders. *Hecker v. Cortinas*, 110 Wn. App. at 869 (2002). We will not disturb

such an exercise of discretion on appeal absent a clear showing of abuse. *Hecker v.

Cortinas*, 110 Wn. App. at 869. Thus, Esmerelda Rodriguez must show an abuse of

discretion in challenging the trial court's rulings. Discretion is abused only when no

reasonable person would have decided the issue as the trial court did. *State v. Rice*, 110

Wn.2d 577, 600, 757 P.2d 889 (1988).

### Protection for Lazaro

Esmeralda Rodriguez argues that the trial court should have included Lazaro on

7

the protection order because exposure to domestic violence constitutes domestic violence itself. Rodriguez also contends that she was in imminent fear of harm to Lazaro and that her fear for her son suffices for him to be a protected party. Finally, she contends that rampant domestic violence in a home necessarily results in psychological injury to a child, regardless of whether the child observes the violence, and the psychological injury inevitably leads to physical symptoms and harm.

We return to the statutory definition of "domestic violence." The definition includes, in relevant part:

> "Domestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members. . . .

RCW 26.50.010(1). An act of violence is not necessary. *Hecker v. Cortinas*, 110 Wn. App. at 870 (2002); *Spence v. Kaminski*, 103 Wn. App. at 334 (2000). The infliction of fear of physical harm suffices. *Hecker v. Cortinas*, 110 Wn. App. at 870. Fear of an assault causes psychological harm and is domestic violence. *In re Marriage of Stewart*, 133 Wn. App. 545, 551, 137 P.3d 25 (2006). A finding that a victim fears imminent physical harm suffices for a domestic violence protection order. *Spence v. Kaminski*, 103 Wn. App. at 334.

During their relationship, Luis Zavala repeatedly physically assaulted Esmeralda Rodriguez, threatened to kidnap Lazaro, and threatened to kill Rodriguez and Lazaro.

8

Nevertheless, Rodriguez presented no testimony that Zavala physically harmed Lazaro or that Lazaro witnessed any altercation between his mother and father. The domestic violence prevention act does not cover fear of a kidnapping. The act also does not allow an order protecting a child because of the parent's fear of physical or psychological harm to the child.

Domestic violence, under RCW 26.50.010(1), embraces "fear of imminent physical harm, bodily injury or assault, between family or household members." We construe this language to be the fear possessed by the one seeking protection, not fear that another family member has of harm to the one for whom protection is sought.

Esmerelda Rodriguez and amicus contend that a child necessarily suffers psychological, and, in turn, physical injury, when domestic violence runs rampant in a home. Both present this court with psychological studies supporting this argument. Nevertheless, Rodriguez did not present this scientific evidence to the trial court, nor did she argue before the trial court that Lazaro suffered as a result of the domestic violence. A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). An appellate court will accept new evidence only on a motion pursuant to RAP 9.11(a) and the fulfillment of all six conditions of the rule. *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990). Rodriguez filed no motion for additional evidence on review.

9

We know domestic violence to be a most serious problem and a blight on American society. We acknowledge that Esmerelda Rodriguez represented herself at the trial court and was not learned in the law. We also recognize that domestic violence protection order petition hearings move quickly. Nevertheless, these considerations do not overcome the rule requiring a party to present all arguments and evidence before the trial court, if the party wishes to forward the contentions and evidence on appeal. The trial court deserves to hear the evidence first. We also observe that the legislature may amend the act on a legislative determination that domestic violence in the household always causes injury to a child such that the child should automatically be shielded from the parent committing the domestic violence.

Esmerelda Rodriguez relies on *In re Marriage of Stewart*, 133 Wn. App. 545 (2006). Nichole and Wilson Stewart begat two minor children. As part of a divorce decree between the parties, the trial court entered a parenting plan granting Nichole primary custody and allowing Wilson visitation of both children. During visitation exchanges, Wilson assaulted Nichole in the presence of the children. During a domestic violence protection order hearing, Nichole presented evidence that both children witnessed multiple acts of domestic violence against Nichole, and they were afraid for her. Nichole did not allege that Wilson assaulted the children. This court wrote, however:

10

In short, there was ample evidence that Wilson caused his children to fear he would assault Nichole. Such fear is indeed psychological harm, as the trial court termed it. It is also domestic violence, and is a statutory basis for an order of protection.

*In re Marriage of Stewart*, 133 Wn. App. at 551. The court concluded protecting the children under the order was proper.

In the case on appeal, the trial court decided not to include Lazaro as a protected party because Lazaro did not witness the attack. Esmeralda Rodriguez presented no evidence that Lazaro was fearful of harm to his mother. Admittedly such evidence would be difficult to present because of the tender age of Lazaro.

In short, we conclude that the trial court did not abuse its discretion in withholding protection from Lazaro under the domestic violence protection order entered in favor of Esmerelda Rodriguez and her daughters.

## Residential Provisions

Esmeralda Rodriguez next argues that the domestic violence prevention act mandates the entry of an order of residential provisions for children in common as part of a hearing on a petition for a domestic violence protection order. Therefore, Rodriguez contends the trial court erred when failing to enter residential placement provisions that also restricted Luis Zavala's contact with the common son, Lazaro. We disagree.

RCW 26.50.060 reads in pertinent part:

(1) Upon notice and after hearing, the court *may* provide relief as

11

follows:

. . . .

(d) On the same basis as is provided in chapter 26.09 RCW, the court *shall* make residential provision with regard to minor children of the parties. However, parenting plans as specified in chapter 26.09 RCW shall not be required under this chapter.

(Emphasis added.)

As a general rule, the word "shall," when used in a statute, is imperative and operates to impose a duty which may be enforced, while the word "may" is permissive only and operates to confer discretion. *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 P.2d 628 (1940). Esmeralda Rodriguez argues that the word "shall" in RCW 26.50.060(1)(d) demands that the trial court enter residential provisions any time the protected party and the restrained party have a minor child in common.

In giving effect to the legislature's intent, we look to the statute's plain and ordinary meaning, reading the enactment as a whole, harmonizing its provisions by reading them in context with related provisions. *Segura v. Cabrera*, 184 Wn.2d 587, 593, 362 P.3d 1278 (2015); *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 238-39, 110 P.3d 1132 (2005). Therefore, we must read subsection (1)(d) of RCW 26.50.060 with the entire statute. The opening line of RCW 26.50.060 grants discretion to the trial court to grant a number of alternatives for relief. Use of the word "may" in RCW 26.50.060(1) confirms the legislature's grant of discretion to enter

12

one or more of the enumerated versions of relief including entry of residential provisions. The word "shall" in RCW 26.50.060(1)(d) only controls the trial court's decision after exercising discretion to enter a plan with residential provisions. The language of subsection (1)(d) mandates that, if the court chooses to impose residential provisions, the court must follow the requirements of chapter 26.09 RCW.

In short, RCW 26.50.060(1)(d) did not mandate the entry of residential provisions at the request of Esmerelda Rodriguez. The trial court did not violate its discretion in rejecting Rodriguez's request of custody and limitation of visitation rights.

## CONCLUSION

We affirm all rulings of the trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____        _____
Lawrence-Berrey, J.                      Pennell, J.