IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TATYANA WRIGHT,

                Respondent,

        v.

MICHAEL WRIGHT,

                Appellant.

No. 83508-4-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Michael Wright appeals a two-year domestic violence protection order (DVPO) protecting his wife Tatyana Wright. Michael argues that the superior court commissioner abused its discretion by entering a DVPO that lasted longer than one year.[1] Finding no error, we affirm.

## I.   FACTS

Michael and Tatyana met in 1996 and were married for 25 years. The parties share a daughter, born in 2003. Tatyana also has two adult children from a previous relationship.

On September 20, 2021, Tatyana filed a DVPO petition against Michael. Tatyana alleged that on September 18, 2021, Michael became upset with her for putting closet

---

[1] Because Michael Wright and Tatyana Wright share a surname, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

shelves on the deck. During the argument that ensued, Michael "assaulted me with his iPhone" by "intentionally jamm[ing] it into the side of my neck with a great force when I was trying to pass by him" and that he stood in the doorway to prevent her from leaving. The responding police officers did not arrest Michael, but they ordered him to leave the house.

Tatyana's petition described several past incidents of domestic violence as follows. In the summer of 1998, Michael repeatedly hit Tatyana with a gallon of milk until it "burst and broke" causing "severe pain" that lasted for months. In August 2003, two days before the parties' daughter was born, Michael "kicked a wooden coffee table" at Tatyana, "almost br[eaking] both of my shins" and leaving "marks for weeks." In June 2006, Michael threw a bottle of orange juice at Tatyana, striking her shoulder and causing her head to "jerk[ ] backward violently." Tatyana went to a doctor the next day, and the doctor reported the incident to police. Michael was arrested, put on probation for three years, and ordered to participate in anger management classes.

Tatyana also described a road rage incident that occurred in 1999. When they were cut off by another driver who moved into their lane, Michael raced in front of the other car and expressed his anger by repeatedly accelerating and slamming on his brakes. Tatyana begged Michael to stop, but his behavior continued until the other car struck them from behind. Michael was charged with assault with a deadly weapon and giving a false statement to police. He pleaded guilty to a misdemeanor and was ordered to take anger management classes.

Tatyana requested that the DVPO "remain effective for longer than one year because respondent is likely to resume acts of domestic violence against me if the order

2

expires in a year." In describing the reasons why, Tatyana explained that she is "afraid of Michael's very unpredictable, angry responses, to a very mild situation" and that "[f]iling a restraining order against him, and divorce paper might just tip the scale, for him to go really wild."

The superior court commissioner entered a temporary DVPO protecting Tatyana from Michael pending a hearing on her request for a final order. The court also entered an order to surrender weapons.

In response to Tatyana's petition, Michael submitted a declaration denying Tatyana's claims and asserting that "Tatyana is the abuser in our relationship, not the other way around." To support his claims, Michael introduced sworn statements from his mother, his two sisters, and a friend, all of whom spoke very highly of Michael's character. He also submitted copies of emails sent to himself and to Tatyana, a text message from Tatanya, a photo of the domestic violence pamphlet given to him by a police officer following the September 18, 2021 incident, and a floorplan of the house showing where she could have exited the room during that incident.

In reply, Tatyana disputed Michael's version of events and asserted that his reply was "not based in reality." She also submitted the sworn declaration of her daughter Dariya Wright, who attested that, when she lived with Michael, she endured a "constant cycle of intimidation" of "verbal and physical abuse" and that her mother was in a "dangerous situation." Tatanya further claimed that, despite the temporary protection order requiring Michael to surrender his weapons, he had surrendered only one of at least seven other firearms in his possession. Tatyana said Michael falsely accused her son of stealing the firearms because he did not want to surrender them. Tatyana asked the court

to grant an order protecting her "for ten years or longer, as there are no minor children involved in this action."

On November 22, 2021, the parties appeared for a hearing before a superior court commissioner on Tatyana's request for a final protection order. The parties relied on their written declarations and did not testify. At the hearing, Tatyana was able to show that Michael had failed to surrender several firearms in violation of the temporary protection order.

At the close of the hearing, the commissioner found that Tatyana met her burden of proving domestic violence and granted a two-year DVPO.

Michael appeals.

## II.  ANALYSIS

### A.  Protection Order

Michael contends that the commissioner erred by entering a two-year DVPO without evidence in the record suggesting that he would resume acts of violence after one year has elapsed.  We disagree.

A trial court's decision granting a protection order is reviewed for abuse of discretion.  In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016).  A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).  We determine whether the trial court's findings are supported by substantial evidence in the record, and, if so, whether those findings support the conclusions of law.  Scott v. Trans-Sys., Inc., 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003).  Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the

truth of the asserted premise. Young v. Toyota Motor Sales, U.S.A., 9 Wn. App. 2d 26, 32, 442 P.3d 5 (2019). We defer to the superior court's determinations regarding the persuasiveness of the evidence, witness credibility, and conflicting testimony. In re the Matter of Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

At the time Tatyana filed her petition, the Domestic Violence Protection Act, former chapter 26.50 RCW, governed civil domestic violence protection order proceedings.[2] The petition must allege domestic violence and be supported by a sworn affidavit "stating the specific facts and circumstances from which relief is sought." Former RCW 26.50.030(1) (2005). A DVPO restraining the respondent from contacting his or her minor children is limited to one year or less. Former RCW 26.50.060(2) (2020). Importantly, if no minor children are involved, and the court finds that "the respondent is likely to resume acts of domestic violence against the petitioner … when the order expires," it has discretion to grant a DVPO for any "fixed period or enter a permanent order of protection." Id.

Here, although not articulated exhaustively by the judicial officer in their final order, substantial evidence supports the commissioner's finding that "an order of one year or less will be insufficient to prevent further acts of domestic violence." The September 2021 incident that prompted Tatanya to seek a DVPO protecting her from Michael was not an isolated event. Tatyana described a history of multiple acts of domestic violence and other aggressive behaviors occurring over a period of more than two decades. Despite twice being ordered to engage in anger management classes, Michael continued to engage in aggressive and sometimes violent behavior towards Tatanya. Tatyana also

---

[2] The DVPA was repealed effective July 1, 2022. See LAWS OF 2021, ch. 215, § 170. Its provisions are now codified under Civil Protection Orders, ch. 7.105 RCW.

expressed concern that the initiation of divorce proceedings might "tip the scale, for [Michael] to go really wild." Although the parties do not share minor children, the upcoming divorce proceedings present an "ongoing opportunit[y] for conflict" warranting a longer period of protection. See Spence v. Kaminski, 103 Wn. App. 325, 333, 12 P.3d 1030 (2000) (affirming a permanent DVPO even though "much of the evidence presented at the hearing concerned past acts and threats").

Michael argues that, in granting the DVPO, the commissioner improperly relied on the fact that "there are still firearms in the home" because Tatyana did not allege that he threatened her with a firearm. He also points out that the 1999 road rage incident did not constitute domestic violence and that the commissioner did not find him to be a serial abuser. But Michael concedes that the commissioner did not abuse his discretion in issuing a DVPO. And he does not challenge the commissioner's findings that he "committed domestic violence as defined in RCW 26.50.010" and that he "represents a credible threat to [Tatanya's] physical safety." Unchallenged findings of fact are treated as verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). And we will not disturb findings of fact supported by substantial evidence, even if there is conflicting evidence. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

Michael also argues that the commissioner found his testimony credible "in many respects." The record does not support this assertion. The commissioner found that Michael was credible in his assertion that Tatyana's son stole his firearms in 2018. But he was "troubl[ed]" by "the fact that there are still firearms in the home" at the time of the hearing, in violation of the surrender order. After noting that the question of whether to grant the petition turned on the parties' credibility, the commissioner stated that, "while it

6

is close in some respects, the reality is I find the petitioner to be credible." And "[c]redibility determinations cannot be reviewed on appeal." Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

Michael next argues that the commissioner erred by "simply announc[ing] the longer order without explaining the basis for the longer order." Regarding the duration of the order, the commissioner stated in his oral ruling:

> This will be a – I know the petitioner has asked for a 10-year order. I am making the order for two years. Of course it's renewable pursuant to statute. And I'm doing it for two years because there are no adult children.

This was an abuse of discretion, Michael contends, because former RCW 26.50.060 does not mandate or encourage a longer protection order if minor children are not involved. He points out the commissioner merely "checked off pre-printed language on the standard form order" and did not make any specific written findings or any findings in its oral ruling to justify a two-year order. But the law drives the forms, not vice versa. In re Marriage of Allen, 78 Wn. App. 672, 679, 898 P.2d 1390 (1995). Michael cites no law requiring additional findings for a DVPO of more than one year.

Michael's reliance on Division Three's unpublished opinion in Matter of Condrey[3] is misplaced. Condrey involved a civil antiharassment order under former chapter 10.14 RCW[4], not a DVPO under former chapter 26.50 RCW. An antiharassment order is "effective for not more than one year unless the court finds that the respondent is likely to resume unlawful harassment of the petitioner when the order expires." Former RCW

---

[3] No. 33981-5-III, slip op. (Wash. Ct. App. Feb. 21, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/339815_unp.pdf.

[4] The legislature repealed this chapter effective July 1, 2022. See LAWS OF 2021, ch. 215, § 170.

10.14.080(4) (2019). In rejecting the respondent's argument that the protection order was too long and that the court failed to inquire into his likelihood for future harassment, the appellate court noted that "[t]he situation between the two had been ongoing for some time" and that "their interactions and harassment eventually resumed" even though the respondent's parents directed him to stay away from the petitioner. Condrey, slip op. at 8-9. Condrey cannot be read for the proposition that, "in deciding [] to issue a longer order, a trial court must consider the nature and length of the dispute between the parties and whether previous efforts at reconciliation had failed" before issuing a DVPO of more than one year. As discussed above, substantial evidence supports the commissioner's finding in this case that "an order of one year or less will be insufficient to prevent further acts of domestic violence."

### B. Attorney Fees

Tatyana requests attorney fees under RAP 18.1 and former RCW 26.50.060(1)(g) for having to respond to this appeal. "If attorney fees are allowable at trial, the prevailing party may recover fees on appeal." Aiken v. Aiken, 187 Wn.2d 491, 506, 387 P.3d 680 (2017) (citing RAP 18.1). The statute authorizing issuance of DVPOs provides that courts may "require the respondent to… reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." Former RCW 26.50.060(1)(g); current RCW 7.105.310(1)(j). We grant Tatyana her reasonable attorney fees and costs on appeal, subject to her compliance with RAP 18.1(d).

8

Affirmed.

_____ Díaz, J.

WE CONCUR:

_____ Coburn, J.          _____ Brennan, J.