[No. 56758-1.   En Banc.   January 2, 1992.]

JAMES K. MORRIS, *Appellant*, v. ARNOLD H. BLAKER,
ET AL, *Respondents*.

134

*Richard B. Sanders,* for appellant.

*William J. Barker, City Attorney,* and *John C. Kouklis* and *Kathryn B. Gerhardt, Assistants,* for respondents.

*James E. Beaver* on behalf of the Second Amendment Foundation, amicus curiae for appellant.

JOHNSON, J. —

FACTS OF CASE

In this case a former mental patient, treated pursuant to the involuntary commitment law, challenges the right of the City of Tacoma[1] to restrict his possession of a concealed weapon.

The City first revoked and then refused to reissue James K. Morris' permit to carry a concealed weapon. In limiting Mr. Morris' right to lawfully carry a gun, the City relied on the state firearms act, RCW 9.41, which prohibits the issuance of a concealed weapons permit to any person who has been confined for treatment of a mental disorder pursuant to RCW 71.05.320 of the involuntary commitment act. RCW 9.41.070(1)(a); RCW 9.41.040(4).

Mr. Morris brought an action against the City asking that the state firearms act be declared unconstitutional and further asking for damages suffered for violation of his civil rights and for conversion of his permit. The trial judge, on summary judgment, dismissed the action and this appeal followed. We reverse in part and remand for further proceedings in light of our opinion.

The facts are as follows.

On June 5, 1986, appellant James K. Morris applied for and was issued a permit authorizing him to carry a concealed weapon. The permit was issued by the Tacoma/Pierce County Law Enforcement Support Agency, a combined city-county agency.

On September 30, 1986, Mr. Morris was the subject of an involuntary commitment proceeding under the state involuntary commitment act, RCW 71.05. That act, specifically RCW 71.05.280 and .320, permits a person to be involuntarily committed for 90 days for treatment of a mental disorder if, following a 14-day period of intensive treatment:

---

[1]For convenience, the respondents, Arnold Blaker, Pierce County, and the City of Tacoma, are referred to collectively hereinafter as the City.

(1) Such person after having been taken into custody for evaluation and treatment has threatened, attempted, or inflicted: (a) Physical harm upon the person of another or himself, or substantial damage upon the property of another, and (b) as a result of mental disorder presents a likelihood of serious harm to others or himself; or

(2) Such person was taken into custody as a result of conduct in which he attempted or inflicted physical harm upon the person of another or himself, and continues to present, as a result of mental disorder, a likelihood of serious harm to others or himself; or

(3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.090(3) . . .; or

(4) Such person is gravely disabled.

RCW 71.05.280.

Mr. Morris apparently agreed to the entry of the findings of fact and conclusions of law in the involuntary commitment proceeding. The findings of fact indicate that Mr. Morris was "gravely disabled" at the time of the hearing. The statute defines "gravely disabled" as follows:

"Gravely disabled" means a condition in which a person, as a result of a mental disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his essential human needs of health or safety, or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety[.]

RCW 71.05.020(1).

The burden of proving that a person is gravely disabled and in need of treatment is on the petitioner; the standard of proof is clear, cogent and convincing evidence. *In re LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). The findings do not indicate whether Mr. Morris was found gravely disabled under the first or under the second section of the statutory definition.[2]

---

[2]The findings of fact entered in the commitment hearing consist of a preprinted standardized form reciting generally the statutory grounds for involuntary commitment and a finding regarding the appropriateness of less restrictive treatment. The inapplicable language set forth on the form is crossed out. This kind of form was specifically disapproved in *LaBelle*, at 219-20.

Under the first section of the definition, RCW 71.05-.020(1)(a), "a showing of a substantial risk of danger of serious physical harm resulting from failure to provide for essential health and safety needs" is required. *LaBelle*, at 204. Further,

the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded.

*LaBelle*, at 204-05.

Under the second section of the definition, RCW 71.05-.020(1)(b), the evidence must

provide a factual basis for concluding that an individual "manifests severe [mental] deterioration in routine functioning". Such evidence must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety. . . . To justify commitment, such care must be shown to be *essential* to an individual's health or safety . . ..

*LaBelle*, at 208.

Mr. Morris also agreed to the entry of an order which is captioned "Agreed Order Committing Respondent for Involuntary Treatment". The order required Mr. Morris to

1. Reside at Cascade Hall and follow house rules.

2. Keep appointments and follow treatment recommendations at Mental Health North.

3. Take medications as prescribed by Mental Health North.

The order further shows that the trial court and Mr. Morris agreed that "intensive treatment" was not essential in his case and that the "less restrictive treatment" available at Cascade Hall and Mental Health North was sufficient. The mental disorder which Mr. Morris suffered from at the time of the involuntary commitment hearing is not reflected in the record before this court.

On December 29, 1986, near the end of the 90-day commitment period, Mr. Morris allegedly telephoned his father and threatened to commit suicide by shooting himself with a gun that Mr. Morris had in his room at Cascade Hall. When Mr. Morris' father called Cascade Hall and reported the threat, Mr. Morris' loaded .357 magnum pistol, ammunition and concealed weapons permit were confiscated.

On January 16, 1987, Arnold Blaker, the city employee in charge of issuing and revoking weapons permits, learned of the involuntary commitment and revoked Mr. Morris' concealed weapons permit.

On February 6, 1989, Mr. Morris again applied for a permit authorizing him to carry a concealed weapon. In his 1989 application Mr. Morris answered "yes" to the question "Have you ever been involuntarily committed to a mental institution?". The application was denied on March 16, 1989, because of the prior involuntary commitment. The City of Tacoma interpreted the state firearms act, specifically RCW 9.41.040(4), to prohibit the issuance of a permit to any person who was ever involuntarily committed for treatment of a mental disorder pursuant to RCW 71.05.320.

Mr. Morris then sued Arnold Blaker, the employee in charge of permits, the City of Tacoma and Pierce County. He claimed the firearms act did not apply to his commitment because he voluntarily agreed to the entry of the "commitment" order and because it did not result in an actual "confinement". He claimed the act was unconstitutional as it denied both due process and equal protection rights. And he claimed the act, if applicable, conflicted with the involuntary commitment statute's guaranty that persons treated for mental disorders would not be presumed incompetent nor lose any civil rights. Mr. Morris asked for damages for violation of his civil rights and for conversion of his permit. Mr. Morris' action was dismissed and we granted his request for direct review.

We hold that the state firearms act, as applied to persons who have previously been involuntarily confined for treatment of a mental disorder pursuant to RCW 71.05.320, violates the equal protection rights of those individuals because it permanently bans them from obtaining concealed weapons permits while it provides former felons an opportunity to obtain such permits upon a showing that the reason for the permit restriction no longer exists. We further hold that the City acted within its authority in revoking the permit of Mr. Morris.

Three issues are presented.

## ISSUES

1. Does the state firearms act permit a city to revoke the concealed weapons permit of a person who agrees to an involuntary commitment for treatment of a mental disorder under RCW 71.05.320?

2. Does the firearms act conflict with that section of the involuntary commitment act that guarantees persons treated or evaluated for mental disorders will not be deprived of their civil rights?

3. Does the firearms act, which prohibits the issuance of concealed weapons permits to persons confined under RCW 71.05.320 of the involuntary commitment act, violate equal protection?

## DECISION

ISSUE ONE.

Conclusion. The state firearms act permits immediate revocation of a concealed weapons permit upon entry of an order committing the holder of the permit to a period of confinement pursuant to RCW 71.05.320. The permit issued to James K. Morris was properly revoked by the City of Tacoma.

Mr. Morris first contends that the state firearms act authorizes revocation of a concealed weapons permit *only* if the holder of the permit is convicted of one of the crimes which would make a person ineligible to legally possess a weapon.

The applicable sections of the act are the following.

(1) A person is guilty of the crime of unlawful possession of a short firearm or pistol, if, having previously been convicted in this state or elsewhere of a crime of violence or of a felony in which a firearm was used or displayed, the person owns or has in his possession any short firearm or pistol.

(2) Unlawful possession of a short firearm or pistol shall be punished as a class C felony under chapter 9A.20 RCW.

(3) As used in this section, a person has been "convicted" at such time as a plea of guilty has been accepted or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing, post-trial motions, and appeals. *A person shall not be precluded from possession if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.*

(4) Except as provided in subsection (5) of this section, a person is guilty of the crime of unlawful possession of a short firearm or pistol if, after having been convicted of any felony violation of the uniform controlled substances act, chapter 69.50 RCW, or equivalent statutes of another jurisdiction, or *after any period of confinement under RCW 71.05.320* or an equivalent statute of another jurisdiction, or following a record of commitment pursuant to chapter 10.77 RCW or equivalent statutes of another jurisdiction, he owns or has in his possession or under his control any short firearm or pistol.

(5) Notwithstanding subsection (1) of this section, a person convicted of an offense other than murder, manslaughter, robbery, rape, indecent liberties, arson, assault, kidnapping, extortion, burglary, or violations with respect to controlled substances under RCW 69.50.401(a) and 69.50.410, who received a probationary sentence under RCW 9.95.200, and who received a dismissal of the charge under RCW 9.95.240, shall not be precluded from ownership, possession, or control of a firearm as a result of the conviction.

(Italics ours.) RCW 9.41.040.

(1) The judge of a court of record, the chief of police of a municipality, or the sheriff of a county, shall within thirty days after the filing of an application of any person issue a license to such person to carry a pistol concealed on his or her person within this state for four years from date of issue, for the purposes of protection or while engaged in business, sport, or while traveling. However, if the applicant does not have a valid permanent Washington driver's license or Washington

state identification card or has not been a resident of the state for the previous consecutive ninety days, the issuing authority shall have up to sixty days after the filing of the application to issue a license. Such applicant's constitutional right to bear arms shall not be denied to him, unless he or she:

(a) Is ineligible to own a pistol under the provisions of RCW 9.41.040; or

(b) Is under twenty-one years of age; or

(c) Is subject to a court order or injunction regarding firearms pursuant to RCW 10.99.040, 10.99.045, or 26.09.060; or

(d) Is free on bond or personal recognizance pending trial, appeal, or sentencing for a crime of violence; or

(e) Has an outstanding warrant for his or her arrest from any court of competent jurisdiction for a felony or misdemeanor; or

(f) Has been ordered to forfeit a firearm under RCW 9.41.098(1)(d) within one year before filing an application to carry a pistol concealed on his person.

*The license shall be revoked immediately upon conviction of a crime which makes such a person ineligible to own a pistol or upon the third conviction for a violation of this chapter within five calendar years.*

(Italics ours.) RCW 9.41.070(1).

RCW 9.41.098(1) authorizes superior courts and courts of limited jurisdiction to order a forfeiture of any firearm

(e) Found in the possession of a person prohibited from possessing the firearm under RCW 9.41.040;

or

(g) Found in the possession of a person found to have been mentally incompetent while in possession of a firearm when apprehended or who is thereafter committed pursuant to chapter 10.77 or 71.05 RCW[.]

The state firearms act is no doubt a sincere effort on the part of the Legislature to regulate the possession of firearms by persons who pose a danger to themselves or to others; unfortunately, it is contradictory and unclear in several critical respects.

■ While the meaning of a statute which is plain and unambiguous must be derived from the face of the statute itself, resort to various tools of statutory construction is appropriate where the language of the statute is ambiguous. *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24

(1991). We have recently held that portion of the firearms act relating to state preemption to be ambiguous and subject to judicial interpretation. *Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 800, 808 P.2d 746 (1991). We now hold that the permit revocation section, RCW 9.41.070(1), also is ambiguous and in need of interpretation.

General rules of statutory construction require that we interpret the statute in a manner that best advances the perceived legislative purpose. *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991). Unlikely, absurd or strained results are to be avoided. *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987); *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). The spirit and intent of the statute should prevail over the literal letter of the law. *Wichert*, at 151; *State v. Keller*, 98 Wn.2d 725, 728, 657 P.2d 1384 (1983).

In the case before us, the statute prohibits the issuance of concealed weapons permits to those who have been convicted of certain crimes and to those who have been confined for treatment of a mental disorder pursuant to RCW 71.05.320. RCW 9.41.040. The firearms act specifically authorizes immediate revocation of a permit "upon conviction of a crime which makes such a person ineligible to own a pistol", RCW 9.41.070(1), but does not expressly include any language authorizing revocation upon entry of an order of confinement pursuant to the involuntary commitment act.[3]

Mr. Morris would have us conclude that the Legislature intended to authorize the revocation of permits issued to those convicted of violent crimes but did not intend to permit the revocation of permits issued to persons who have been judicially determined to be suffering from a mental disorder and who present a likelihood of danger to themselves or others, or who are suffering from a mental disorder which has resulted in their being gravely disabled and

---

[3]The involuntary commitment act, RCW 71.05, establishes procedures for 72-hour, 14-day, 90-day and 180-day commitments. It is only RCW 71.05.320, authorizing involuntary treatment for 90 days, that is involved in this case.

thus in need of involuntary supervision and treatment. RCW 71.05.280; RCW 71.05.020(1); *In re LaBelle*, 107 Wn.2d 196, 204-05, 728 P.2d 138 (1986).

■ The construction of the firearms act urged by Mr. Morris would be contrary to the Legislature's purpose in enacting the statute, which unquestionably is to protect the public from violence, and would lead to an absurd interpretation of the act. The Legislature could not possibly have intended that a previous involuntary commitment could be grounds for denying a permit application, but not for revoking a permit.

■ We thus read the act to mean that a license to carry a concealed weapon "shall be revoked immediately upon conviction of a crime or upon entry of an order of commitment pursuant to RCW 71.05.320 which makes such a person ineligible to own a pistol."

Mr. Morris argues that even if revocation is proper under the statute, he had a procedural due process right to notice and a hearing prior to revocation.

■■ While article 1, section 24 of the Washington State Constitution confers upon individuals of this state the right to bear arms, that right is not absolute and is subject to reasonable regulation by the State under its police power. *State v. Krantz*, 24 Wn.2d 350, 353, 164 P.2d 453 (1945); *Second Amendment Found. v. Renton*, 35 Wn. App. 583, 586, 668 P.2d 596 (1983). Assuming, without deciding, that Mr. Morris has a protected interest sufficient to trigger due process guaranties, it is necessary to determine the extent of process that is due under the constitution for the protection of that interest. *Buffelen Woodworking Co. v. Cook*, 28 Wn. App. 501, 505, 625 P.2d 703, *review denied*, 95 Wn.2d 1020 (1981). The concept of due process is a flexible one and calls for procedural protections that a given situation demands. *In re Whitesel*, 111 Wn.2d 621, 630, 763 P.2d 199 (1988). Generally, in looking at the degree of process that will be afforded in a particular case, the court balances the following interests: (1) the private interest to be protected; (2) the risk of erroneous deprivation of that interest by the

government's procedures; and (3) the government's interest in maintaining the procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976); *Ritter v. Board of Comm'rs of Adams Cy. Pub. Hosp. Dist. 1*, 96 Wn.2d 503, 511, 637 P.2d 940 (1981).

█ The private interest to be protected here, the right to bear arms, is one that is subject to reasonable limitation by the Legislature. *Krantz*, at 353; *Second Amendment Found.*, at 586. The Legislature has reasonably limited the right to own or possess pistols and other short firearms to persons who do not present an obvious threat to themselves or others. The risk of erroneous deprivation of the right to a weapons permit is small in the circumstances present here, where a judicial determination of mental disorder and of some danger — whether passive or aggressive — to self or others[4] has already been made. Finally, the government's interest in being able to quickly remove dangerous weapons from those who present a danger to the public weighs against a prerevocation notice and hearing procedure. We hold, therefore, that the City's immediate revocation of Mr. Morris' concealed weapons permit after learning of the involuntary commitment order did not violate any liberty or property interest which Mr. Morris may have had in the permit.

Mr. Morris next argues that the revocation provision of the act should not apply to him. He now disputes the findings of fact entered in the involuntary commitment hearing and argues that he was pressured into the commitment by family members. He denies that he suffered from a mental disorder at the time of the commitment hearing and he denies that he was in any way "confined", as he was committed under the least restrictive alternative section, rather than the detention section, of the statute. Mr. Morris did

---

[4]The standard for commitment is set forth in the statute at RCW 71.05.280 and in our interpretations of the statute. *See, e.g., LaBelle; In re Harris*, 98 Wn.2d 276, 654 P.2d 109 (1982). We in no way intend to alter that standard by this opinion.

not appeal the order committing him to reside at Cascade Hall for 90 days. The record in that proceeding is not before us and we have no way of resolving the factual dispute that Mr. Morris now introduces. We read the findings and the commitment order to mean what they say, that is that Mr. Morris agreed to the entry of the documents and to a finding that Mr. Morris was gravely disabled. The least restrictive alternative apparently was believed to be appropriate in his case. That order required him to *reside* at Cascade Hall and submit to mental health treatment. Mr. Morris states in his brief that he was treated as an outpatient. While he may have received treatment at Mental Health North as an outpatient, he was *required to reside* at Cascade Hall. It is therefore impossible to interpret the order as simply requiring outpatient treatment.

■ With respect to whether Mr. Morris was thus "confined" under the terms of the firearms act, it is helpful to look to the language of the involuntary commitment act as well as to the legislative history of the firearms act.

Although the involuntary commitment act, in RCW 71.05.320, provides for two alternative forms of commitment, the Legislature's use of the term "confinement" encompasses both forms. This is best demonstrated by looking at the act's use of this term. RCW 71.05.280 lists four grounds under which a person may be "confined" for further treatment, yet RCW 71.05.320(1) makes clear that the grounds apply both to full detentions and to less restrictive treatment. Further, when the Legislature adopted the language "confinement under RCW 71.05.320" in the firearms act, its bill reports indicate that it considered the term to be synonymous with "commitment".[5]

The Legislature thus intended the word "confinement" to encompass all commitments under RCW 71.05.320, not just those involving full detention.

---

[5]Laws of 1983, ch. 232: H.R. Rep. 3782, 48th Legislature, at 2; S. Rep. 3782, 48th Legislature, at 2; Final Legislative Bill Rep. 3782, 48th Legislature, at 2.

ISSUE TWO.

Conclusion. The conflict between the involuntary commitment act and the state firearms act is resolved by giving effect to the firearms act, which is the more specific and more recently enacted of the statutes.

Mr. Morris argues that there is a conflict between the involuntary commitment act's guaranty that an individual will not lose civil rights as a consequence of receiving treatment for a mental disorder and the firearms act section which makes certain former mental patients ineligible to own or possess short firearms and pistols. *Compare* RCW 71.05.450 *with* RCW 9.41.040(4).

Without deciding whether the right to own or possess a firearm is a civil right, we hold that the state firearms act was meant to create an exception to the general language of the involuntary commitment act.

A conflict between two statutory provisions can be resolved by giving effect to the more specific and more recently enacted statute, in this case the firearms act. *Citizens for Clean Air v. Spokane*, 114 Wn.2d 20, 37, 785 P.2d 447 (1990). The firearms act, originally enacted in 1935, but amended and enacted in its present form in 1983, deals specifically with the right of a person involuntarily committed under RCW 71.05.320 to own or possess dangerous weapons. The involuntary commitment act enacted in 1973, on the other hand, deals more generally with all of a former patient's civil rights. RCW 71.05.450. Thus the limitation contained in the firearms act should be construed as an exception to the more general guaranties contained in the involuntary commitment act.

ISSUE THREE.

Conclusion. The state firearms act, as applied to persons who have been confined for treatment of a mental disorder pursuant to RCW 71.05.320, is unconstitutional. The act denies equal protection of the law to those former mental patients by permanently banning them from obtaining concealed weapons permits while affording persons who have

been convicted of violent felonies an opportunity to demonstrate rehabilitation or innocence.

As stated above, the uniform firearms act makes it a crime for any person to own, possess or control a short firearm or pistol if that person: (1) has been convicted of a crime of violence or of a felony in which a firearm was used or displayed; (2) has been convicted of a felony violation of the Uniform Controlled Substances Act; or (3) has been confined for treatment of a mental disorder pursuant to RCW 71.05.320, or under RCW 10.77, the criminal commitment statute. RCW 9.41.040(1), (4). The statute further provides:

> A person shall not be precluded from possession if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

RCW 9.41.040(3).

The firearms act provides no comparable means for a person involuntarily confined for treatment of a mental disorder under RCW 71.05.320 to regain eligibility for a concealed weapons permit, even if the circumstances which resulted in the involuntary commitment no longer exist and are not reasonably likely to recur. Mr. Morris argues that because the act treats these former mental patients differently than others who are ineligible at various times from obtaining concealed weapons permits, the act violates the equal protection rights of these former mental patients. We agree.

The first step in analyzing a statute under equal protection principles is generally to determine whether to apply minimal, intermediate or strict scrutiny. *Daggs v. Seattle*, 110 Wn.2d 49, 55, 750 P.2d 626 (1988). In this case, however, our analysis does not depend on the level of scrutiny employed. The classification here violates equal protection even under minimal scrutiny.

■ Under the minimal scrutiny or rational basis test, a statute must meet the following 3-part test in order to satisfy equal protection:

1. Does the classification apply alike to all members within the designated class?

2. Does some rational basis exist for reasonably distinguishing between those within the class and those outside the class? and

3. Does the challenged classification bear a rational relation to the purpose of the challenged statute? *Associated Grocers, Inc. v. State*, 114 Wn.2d 182, 187, 787 P.2d 22 (1990), *cert. denied*, 112 L. Ed. 2d 663 (1991).

■ The firearms act does not meet the second part of this test. No rational basis exists for the act's distinction between those who are permanently restricted from obtaining a concealed weapons permit (former mental patients confined pursuant to RCW 71.05.320) and those who are given an opportunity to requalify for a permit (persons convicted of violent crimes). No plausible justification exists to explain why those who have been convicted of violent crimes should be deemed capable of rehabilitation, but those who were previously involuntarily committed for treatment of a mental disorder are not.[6]

The provisions of the firearms act are thus invalid as applied to those persons who have been involuntarily confined for treatment of a mental disorder pursuant to RCW 71.05.320 insofar as the act does not provide those former mental patients with an opportunity to prove that the reason for the restriction on their right to carry weapons no longer exists.

---

[6]We note that the same conclusion was reached by a federal trial court judge analyzing a constitutional challenge to a similar federal statute. *Galioto v. Department of Treasury, Bur. of Alcohol, Tobacco & Firearms*, 602 F. Supp. 682 (D.N.J. 1985). The *Galioto* case was certified to the United States Supreme Court, and the judgment ultimately vacated after Congress amended the federal statute to provide former mental patients the same right to obtain a gun permit as afforded ex-convicts. *United States Dep't of Treasury, Bur. of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556, 91 L. Ed. 2d 459, 106 S. Ct. 2683 (1986).

The facts of this case, specifically Mr. Morris' threat to use a validly held .357 magnum on himself, point to the need for strong regulation in this area. The legislation must, however, be constitutional. We are unable to remedy the statutory deficiencies in this case. The adoption of new procedures under which former mental patients might qualify for permits will necessarily require the resolution of many issues and the consideration of experts' opinions that reach far beyond those contained in the briefs and record in this case.

Mr. Morris further asks us to hold the firearms act unconstitutionally discriminates against *all* former mental patients because *any* disqualification of former mental patients violates equal protection.

Again, it is unnecessary for us to determine the level of scrutiny that needs to be applied in this analysis, for we hold that such a classification, if narrowly drawn to include only those persons who have been confined for treatment of a mental disorder, pursuant to RCW 71.05.320, may be upheld under even a strict scrutiny standard. That standard requires the State to prove a compelling state interest which justifies the classification set forth in the statute. *Darrin v. Gould*, 85 Wn.2d 859, 865, 540 P.2d 882 (1975).

A compelling state interest in the safety of the public justifies a reasonable restriction on the right to weapons permits to persons who have been involuntarily committed for treatment of a mental disorder pursuant to RCW 71.05.320.

The involuntary commitment act permits 90-day confinements *only* if the person so confined has been shown by clear, cogent and convincing evidence to present a danger to self or others, either by aggressive or passive behavior. RCW 71.05.280, .320; *In re LaBelle, supra*. The State has an interest in protecting public safety, *see, e.g.*, RCW 71.05-.010(7), and in keeping dangerous weapons out of the hands of persons who, because of an inability to make rational judgments, present a foreseeable risk to others. *See, e.g., Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933-34, 653 P.2d 280 (1982).

The current statutory classification includes *only* those persons who have been judicially determined to be gravely disabled or to present a danger to themselves or others as a result of a mental disorder. The State has a compelling interest in keeping weapons out of the hands of persons who have been the subject of such a judicial determination.

With respect to Mr. Morris' actions for damages, we find that the parties should have an opportunity, in light of our decision here, to develop the factual record and arguments necessary for the trial court to make a reasoned decision. We thus decline to resolve the remaining issues raised by the parties.

In sum, we hold the state firearms act is unconstitutional insofar as it does not provide a method for regaining eligibility to obtain a concealed weapons permit to those persons who have been confined for treatment of a mental disorder pursuant to RCW 71.05.320. The act properly permits immediate revocation of a concealed weapons permit from these persons.

The summary judgment is reversed with respect to the constitutional issue and the case is remanded for a determination consistent with this opinion.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.