IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of: | ) | |
| | ) | No. 38480-2-III |
| N.A.Z. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

FEARING, J. — N.A.Z. challenges his 180-day commitment to mandatory outpatient mental health treatment under the involuntary treatment act's less restrictive alternative option. He asserts that insufficient evidence supported the superior court's finding that he was gravely disabled. Because the trial court could have found a grave disability by clear, cogent, and convincing evidence, we affirm.

## FACTS

N.A.Z. suffers from schizophrenia. The 27-year-old man resides with his parents.

As a result of the schizophrenia, N.A.Z. has undergone a repeated pattern of treatment that typically begins with a hospitalization. N.A.Z. has been hospitalized six times due to psychiatric episodes. On the first occasion, N.A.Z. was extremely paranoid

and internally preoccupied. On this first hospitalization, professionals needed at least one month to stabilize N.A.Z.'s condition.

As the pattern of treatment goes and after a discharge from the mental health hospital, temporary court orders have directed N.A.Z. to comply with mandatory outpatient "less restrictive alternative treatment." Eventually, the less restrictive alternative order expires, and N.A.Z. lives without any restraints or demands.

While under mandatory outpatient treatment, N.A.Z. has cooperated by taking prescribed Clozaril, an antipsychotic medication. The medication reduces auditory and visual hallucinations and decreases paranoia. After the expiration of court orders and discharge from "less restrictive alternative treatment," N.A.Z. has stopped taking Clozaril. When ceasing medication, N.A.Z. hears nonexistent voices, grows paranoid, and speaks to himself. He then denies encountering any mental health problem.

In the most recent episode, N.A.Z. decompensated and required inpatient treatment for seventy-nine days at Lourdes Counseling Center from July through October 2020. Decompensation to psychologists means a breakdown in an individual's defense mechanisms resulting in progressive loss of normal functioning or worsening of psychiatric symptoms. By the time of the admission to Lourdes Counseling Center in July 2020, N.A.Z. had been catatonic for several days, could not communicate, required prompting to eat and drink, and could not care for other basic needs. After release from

No. 38480-2-III,
*In re Detention of: N.A.Z.*

seventy-nine days of hospitalization, N.A.Z. refused to speak with care providers seeking to assist him.

PROCEDURE

Lourdes Counseling Center mental health professionals Dan Pitts and Taylor Brummett petitioned for a 180-day continuation of mandatory "less restrictive alternative treatment" for N.A.Z. The two professionals alleged N.A.Z. was gravely disabled.

During a hearing on the petition, N.A.Z.'s treating psychiatrist, Hardildar Gill, opined that mandatory treatment, under a less restrictive alternative order, would benefit N.A.Z. According to Dr. Gill, no other viable option was available to assist N.A.Z. The less restrictive alternative order would allow N.A.Z.'s case manager to visit him once a week to assess whether he has taken the Clozaril and has undergone a blood draw needed as a result of the medication. Gill feared that, without the involuntary treatment order, N.A.Z. would return to hospitalization.

Dr. Taylor Brummett, the designated crisis responder, testified, at the evidentiary hearing, that, without an involuntary treatment order, N.A.Z. would cease medications and other cooperation and decompensate again. Brummett opined that a less restrictive alternative order would benefit N.A.Z. in part because he lacked the insight to medicate without an order demanding the treatment.

3

No. 38480-2-III,
*In re Detention of: N.A.Z.*

N.A.Z. opposed the petition. Nevertheless, N.A.Z. testified, during the commitment hearing, that he suffered from schizophrenia. N.A.Z. averred that he would take his medication in the absence of a mandatory court order.

The superior court granted Dan Pitts and Taylor Brummett's petition for 180 days of involuntary outpatient treatment. The court found N.A.Z. to be gravely disabled. The court highlighted that, during the last time N.A.Z. had been removed from mandatory treatment, he decompensated and required seventy-nine days of inpatient treatment for stabilization. The superior court feared that a lack of mandatory treatment would set N.A.Z. up for failure.

## LAW AND ANALYSIS

A petitioner for involuntary treatment bears the burden of proving by clear, cogent, and convincing evidence the existence of a grave disability. RCW 71.05.310; *Morris v. Blaker*, 118 Wn.2d 133, 137, 821 P.2d 482 (1992). A finding of grave disability must be supported by substantial evidence that the trial court could reasonably have found to be clear, cogent, and convincing. *In re Detention of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). In considering an evidentiary challenge, this court views the evidence in the light most favorable to the petitioner and does not contradict the trial court's decisions regarding witness credibility or the persuasiveness of the evidence. *In re Detention of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021).

4

No. 38480-2-III,
*In re Detention of: N.A.Z.*

The involuntary treatment act (ITA), chapter 71.05 RCW, governs the State's coercive authority over individuals suffering from behavioral health disorders. In accordance with the ITA, the State holds a legitimate interest in providing care to those unable to care for themselves. *In re Detention of LaBelle*, 107 Wn.2d 196, 201 (1986). Under the ITA, the court may order an individual to undergo "less restrictive alternative treatment" by placement in a mandatory program of individualized treatment less restrictive in nature than inpatient services. RCW 71.05.020(34); RCW 71.05.585.

At the end of a period of commitment to "less restrictive alternative treatment," a crisis responder may file a new petition for involuntary treatment on the ground that the individual continues to be gravely disabled. RCW 71.05.320(4)(d). The court may then order the individual to additional treatment for up to 180 days. RCW 71.05.320(6)(a).

An individual is gravely disabled under two alternative tests:

> "Gravely disabled" means a condition in which a person, as a result of a behavioral health disorder: (a) is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

Former RCW 71.05.020(23) (2021). When adjudging whether a person is gravely disabled, a court "must consider the symptoms and behavior of the respondent in light of all available evidence concerning the respondent's historical behavior." Former RCW 71.05.245(1) (2018). Even if an individual's current behavior, standing alone, might not

5

support a finding of grave disability, a court may consider past incidences of involuntary hospitalization or severe deterioration and whether an individual will probably deteriorate without treatment. Former RCW 71.05.245(2) (2018). The superior court should grant weight to evidence of a prior history or pattern of decompensation and discontinuation of treatment resulting in repeated hospitalizations. RCW 71.05.285.

Sufficient evidence supported the superior court's finding of N.A.Z. suffering a grave disability under both prongs of former RCW 71.05.020(23) (2021). The court credited Dan Pitts and Taylor Brummett's testimony over that of N.A.Z. when assessing that N.A.Z. would fail to engage with treatment if removed from a program of mandatory outpatient treatment. The court underscored that N.A.Z.'s prior removal from "less restrictive alternative treatment" resulted in a seventy-nine-day hospitalization. Evidence demonstrated that N.A.Z.'s untreated behavioral health disorder would result in danger of serious harm and manifest severe deterioration from safe behavior. N.A.Z. failed to continue with treatment in the past.

N.A.Z. forwards *In re Detention of C.K.*, 108 Wn. App. 65, 29 P.3d 69 (2001) and argues that he has not been involved in criminal activity when discontinuing treatment. According to *Detention of C.K.*, a court should consider whether an individual poses a danger to others when not subject to treatment for a behavioral health disorder. The *C.K.* court considered a history of decompensation during which the respondent had threatened sexual acts on young girls. But the grave disability test may focus on the risks an

6

No. 38480-2-III,
*In re Detention of: N.A.Z.*

individual's behavioral health disorder imposes upon his or her own bodily health and safety. A court may substantiate a finding of grave disability without finding an individual poses danger to others.

## CONCLUSION

We affirm the superior court's finding of grave disability and the order for involuntarily outpatient treatment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.

7