# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of: | No.  56506-4-II |
| | (Consol. w/ |
| B.R., | No.  56643-5-II) |
| Appellant. | UNPUBLISHED OPINION |

LEE. J. — B.R. appeals the superior court's order denying revision of the superior court commissioner's findings of fact, conclusions of law, and order detaining B.R. under a 180-day civil commitment.  B.R. argues there is not substantial evidence to support the superior court's finding that he is gravely disabled.  Because the superior court's finding that B.R. is gravely disabled is supported by substantial evidence, we affirm.

## FACTS

In February 2018, B.R. was admitted to Western State Hospital (WSH) for a competency evaluation to assess whether he could proceed to trial on a second-degree assault charge.  This admission stemmed from an incident where B.R. had allegedly assaulted his father.  At the time of the alleged assault, B.R.'s father reported that B.R. "was responding to internal stimuli" and "auditory hallucinations."  Clerk's Papers (CP) at 34.  When WSH found B.R. incompetent to stand trial, the State dismissed the criminal charge, and B.R. was civilly committed under RCW 71.05.280(3)(b).

B.R. has been admitted to WSH five times since 2011.  WSH diagnosed B.R. with schizoaffective disorder.  In addition to receiving treatment at WSH, B.R. has had behavioral

health treatment at various hospitals and outpatient psychiatric facilities over the years in both King County and Kitsap County.

In June 2021, B.R.'s treating physician, Dr. Mary Zesiewicz, and treating psychologist, Dr. Evan Lima, filed a petition for a 180-day involuntary treatment (180-day petition). In their joint declaration in support of the 180-day petition, Dr. Zesiewicz and Dr. Lima stated that B.R. continued to exhibit symptoms of serious mental illness. Specifically, B.R. paced the hallways responding to internal stimuli, declined medications, did not attend to his hygiene, and had on multiple occasions been verbally and physically aggressive with staff. Furthermore, the declaration stated that if B.R. "were discharged from WSH he would represent a substantial likelihood of repeating similar acts to those of the [assault] due to mental illness." CP at 35.

Dr. Zesiewicz also filed a petition for involuntary treatment with antipsychotic medication (medication petition). In the medication petition, Dr. Zesiewicz stated that "[w]hen [B.R.] was on olanzapine and prolixin he was stable and placed on the discharge list. . . . Off medications he has become progressively more disorganized, disheveled, talking and laughing to himself especially at night." CP at 50. Additionally, she stated that B.R. had a "history of psychosis, hostility, aggression, disorganization and medication noncompliance . . . [and a] long history [of] auditory hallucinations, lack[ed] ability to care for basic needs and lack[ed] insight into mental illness or need for psychotropic medication." CP at 50.

The superior court commissioner held a hearing on both the 180-day petition and the medication petition. B.R. did not appear at the hearing, and the commissioner found that B.R. waived his right to participate. However, in order to protect B.R.'s "substantial liberty interest,"

the commissioner had the State present evidence and testimony to avoid a decision based on the petition alone. Verbatim Report of Proceedings (VRP) (Sept. 10, 2021) at 9.

A.  HEARING TESTIMONY

1.  Dr. Lima's Testimony

Dr. Lima testified to the 180-day petition. Dr. Lima is a clinical psychologist at WSH and treated B.R. for approximately nine months. During those nine months, Dr. Lima interacted with B.R. multiple times per week. Additionally, in preparation for the hearing, Dr. Lima reviewed available WSH records on B.R., and spoke with floor staff and different treatment team members. Dr. Lima testified:

> I've seen [B.R.] responding to internal stimuli. He pretty much . . . walks around the ward responding, having conversations. Sometimes he is yelling and screaming. He presents with a lot of the negative symptoms of schizoaffective disorder . . . . So, thought disorganization, an absence of expression. He also has poor impulse control, aggressive behaviors and limited insight and judgment into his symptom presentation.
>
> . . . .
>
> . . . He's yelled at me, personally. Yelling at the internal stimuli that he's responding to.
>
> . . . .
>
> [B.R.] had some instances of physical violence. . . . [I]n June of this year, [B.R.] was hitting the nurse's station window with closed fists, making threats towards staff. And then earlier this week . . . he physically attacked staff, scratching one of the staff just under the eye with her ID badge and biting another staff to the point where [B.R.] was not complying and was placed in seclusion and restrained for a short time.

VRP (Sept. 10, 2021) at 15, 17.

Dr. Lima further testified that B.R. was not medication compliant and did not believe he was suffering from mental illness. Additionally, Dr. Lima expressed concerns over both

3

community safety and B.R.'s own safety if B.R. was released. Dr. Lima did not believe there was a less restrictive alternative and felt that "medication compliance [was] going to be huge for [B.R.]" because B.R. had previously been compliant with medication, stable, and placed on a discharge list. VRP (Sept. 10, 2021) at 21.

2.      Dr. Zesiewicz's Testimony

Dr. Zesiewicz, a staff psychiatrist at WSH, testified to the medication petition. Dr. Zesiewicz treated B.R. for several months beginning in fall 2020. Dr. Zesiewicz corroborated Dr. Lima's testimony, stating that B.R. had "[a] lot of auditory hallucinations, and delusional thinking. Responding to unseen others, talking about each of them. A lot of yelling and screaming. A lot of mood volatility. . . . [A] lot of anger. A lot of disorganization." VRP (Sept. 10, 2021) at 35.

Dr. Zesiewicz testified that B.R. had stopped taking one medication in the summer of 2020 and another medication in the fall of 2020. B.R. never expressed why he did not want to take medications. Dr. Zesiewicz stated that based on her conversations with ward staff, when B.R. had been on the medications, he had been stable and discharge-ready. Additionally, Dr. Zesiewicz believed that B.R.'s condition, without medication, continued to worsen between the time she had filed the petition in June to the date of the hearing. Dr. Zesiewicz also testified that failure to administer medications would substantially prolong B.R.'s stay at WSH and she felt the medications were necessary.

B.    SUPERIOR COURT COMMISSIONER RULINGS

On the 180-day petition, the superior court commissioner orally ruled that clear, cogent, and convincing evidence showed B.R. was gravely disabled under RCW 71.05.020(24)(b).[1] Additionally, the commissioner found "based on the testimony and evidence from Dr. Lima, that [B.R.] present[ed] a substantial likelihood of repeating acts similar to the charged index criminal offense, which was assault in the second degree." VRP (Sept. 10, 2021) at 31. The commissioner then ordered continued treatment for B.R. at WSH for up to 180 days.

In the written order committing B.R. to 180 days' treatment, the superior court commissioner entered findings of fact and conclusions of law, and incorporated the oral findings into the written order. The findings of fact stated that "as a result of a behavioral health disorder [B.R.] manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety." CP at 5. The commissioner also entered several facts in support of its determination based on Dr. Lima's testimony.

B.R. filed a motion for revision of the commissioner's 180-day involuntary commitment order. B.R. asserted that the State failed to prove by clear, cogent, and convincing evidence that he was gravely disabled. Additionally, B.R. argued that the State failed to prove by clear, cogent, and convincing evidence that he was "substantially likely to commit acts similar to the charged criminal behavior." CP at 130. B.R. also filed a motion for revision of the commissioner's order

---

[1] Under RCW 71.05.020(24)(b), a person is gravely disabled when he or she, "as a result of a behavioral health disorder . . . manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety."

authorizing administration of antipsychotic medications. B.R. asserted that Dr. Zesiewicz did not attempt to obtain B.R.'s informed consent under RCW 71.05.215 and, therefore, the superior court commissioner erred in granting the medication order.

The superior court judge denied both motions and adopted the commissioner's findings of fact and conclusions of law.

B.R. appeals.

ANALYSIS

B.R. appeals the superior court commissioner's findings of fact, conclusions of law, and order detaining respondent under a 180-day civil commitment, along with the superior court's denial of B.R.'s motion to revise the commitment order.[2,3] We affirm the superior court.

---

[2] The order at issue in this case has expired. However, because involuntary commitment orders have collateral consequences for future commitment determinations, this appeal is not moot. *In re Det. of M.K.*, 168 Wn. App. 621, 622, 279 P.3d 897 (2012).

[3] B.R. also filed a notice of appeal of his medication order pro se, despite having an appointed appellate counsel. Appellants, represented by appellate counsel, may not themselves file pleadings with the Court of Appeals. *State v. Romero*, 95 Wn. App. 323, 325-26, 975 P.2d 564, *review denied*, 138 Wn.2d 1020 (1999). Furthermore, the right to assistance of counsel and the right to proceed pro se are mutually exclusive. *State v. Vermillion*, 66 Wn. App. 332, 340, 832 P.2d 95 (1992), *review denied*, 120 Wn.2d 1030 (1993).

Even if the appeal of the medication order was properly filed, B.R.'s briefing to this court only addresses the 180-day commitment order. Appellate courts decide cases only on the basis of issues set forth in the parties' briefs. RAP 12.1(a); *Wash. Pro. Real Estate LLC v. Young*, 163 Wn. App. 800, 818 n.3, 260 P.3d 991 (2011), *review denied*, 173 Wn.2d 1017 (2012). Moreover, we do not consider issues abandoned on appeal. *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 876, 409 P.3d 160 (2018). A party abandons an issue on appeal by failing to brief the issue. *Blue Spirits Distilling, LLC v. Wash. State Liquor & Cannabis Bd.*, 15 Wn. App. 2d 779, 794, 478 P.3d 153 (2020). Because B.R. does not address the medication order in his briefing, he has presumably abandoned his appeal of the medication order. Therefore, we do not address challenge to the medication order.

A.      STANDARD OF REVIEW

Superior court commissioner rulings are subject to revision by a superior court judge. RCW 2.24.050. The superior court judge reviews the commissioner's findings of fact and conclusions of law de novo based on evidence and issues presented to the commissioner. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). We review the superior court's ruling, not the commissioner's decision. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). But "[u]nder RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

We review challenges to the sufficiency of the evidence in a light most favorable to the State. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019). "When the standard is 'clear, cogent and convincing . . . the findings must be supported by substantial evidence in light of the highly probable test.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). In other words, the evidence must show that a fact at issue is highly probable. *L.K.*, 14 Wn. App. 2d at 550. An appellate court will not disturb a superior court's findings if those findings are supported by substantial evidence which "the lower court could reasonably have found to be clear, cogent and convincing." *LaBelle*, 107 Wn.2d at 209.

B.      GRAVELY DISABLED

B.R. argues that the superior court erred when it concluded that he was gravely disabled at the time of his recommitment hearing and in issuing the 180-day commitment order. B.R. asserts that the superior court's conclusion was unsupported by substantial evidence. We disagree.

1.      Legal Principles

Generally, a person may be "involuntarily committed for treatment of mental disorders if, as a result of such disorders, they either (1) pose a substantial risk of harm to themselves, others, or the property of others, or (2) are gravely disabled." *Id.* at 202..  The State has "[t]he burden of proving that a person is gravely disabled and in need of treatment . . . [and] the standard of proof is clear, cogent and convincing evidence." *Morris v. Blaker*, 118 Wn.2d 133, 137, 821 P.2d 482 (1992); RCW 71.05.310.

There are two alternate definitions of "gravely disabled," both of which provide a basis for involuntary commitment.  *LaBelle*, 107 Wn.2d at 202.  Under RCW 71.05.020(24),[4] a gravely disabled person is one who

> as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

In making its determination that a person is gravely disabled, a court "must consider the symptoms and behavior of the respondent in light of all available evidence concerning the respondent's historical behavior."  RCW 71.05.245(1).  Furthermore, certain symptoms or behaviors may support a finding of grave disability if they "are closely associated with symptoms or behavior which preceded and led to a past incident of involuntary hospitalization, severe deterioration, or one or more violent acts," "these symptoms or behavior represent a marked and

---

[4] RCW 71.05.020(24), effective July 1, 2022, is the current provision where the definition of "gravely disabled" is found.  B.R. cites to former RCW 71.05.020(22) (2019) for the definition of "gravely disabled."  As the prongs within the definition of "gravely disabled" remain the same, the 2022 amendment to the statute does not change the analysis in this appeal.

concerning change in the baseline behavior of the respondent," and "without treatment, the continued deterioration of the respondent is probable." RCW 71.05.245(2).

      a.     Prong (a): danger of serious physical harm from failure to provide for essential health and safety needs

Under RCW 71.05.020(24)(a), the State must show an individual, "as a result of a mental disorder, is in danger of serious physical harm" from "his or her failure to provide for essential health and safety needs." *LaBelle*, 107 Wn.2d at 203. The State must prove prong (a) with substantial evidence. *See id.* at 204. Such evidence includes "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *Id.* at 204-05.

Here, the 180-day commitment order does not address prong (a); rather, the commissioner's order finds grave disability only under prong (b). B.R.'s contention that "[t]he trial court concluded that B.R. met both [prongs]" is not supported by the record. Br. of Appellant at 8. Because B.R. was not committed under prong (a), we need not address prong (a).

      b.     Prong (b): severe mental deterioration in routine functioning

RCW 71.05.020(24)(b) contains two requirements: the State must show that an individual manifests severe mental deterioration in routine functioning and the individual is not receiving essential care for his or her health and safety. RCW 71.05.020(24)(b); *LaBelle*, 107 Wn.2d at 205. There must be a factual basis for a court to conclude that RCW 71.05.020(24)(b) applies. *LaBelle*, 107 Wn.2d at 208.

> [E]vidence must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential

for his or her health or safety. It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in his best interests. To justify commitment, such care must be shown to be *essential* to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered.

*Id.* (emphasis in original). Additionally, to be gravely disabled under prong (b), the individual must be unable to make rational decisions regarding his or her treatment. *Id.*

2.      180-Day Commitment Order

B.R. argues there was not substantial evidence under prong (b) of grave disability to support committing him to 180 days' treatment at WSH. Specifically, B.R. asserts that the superior court overly relied on Dr. Lima's testimony when Dr. Lima was not a first-hand witness to specific incidents of B.R.'s aggression. The State argues "[s]ufficient evidence shows that [B.R.], as a result of his behavioral health disorder, manifests severe deterioration in routine functioning." Br. of Resp't at 20. We agree with the State.

During the hearing, Dr. Lima testified extensively about his interactions with B.R. Dr. Lima interacted with B.R. multiple times per week for over nine months. Dr. Lima personally witnessed B.R. responding to internal stimuli, B.R.'s poor impulse control and thought disorganization, along with instances of B.R.'s verbal aggression, including aggression directed at him. Additionally, Dr. Lima testified that B.R.'s symptoms worsened over time because B.R. refused to take medication and engage with his treatment team. Because of B.R.'s continued decline, which Dr. Lima attributed to B.R.'s behavioral disorder, Dr. Lima did not believe B.R. would be able to meet his health and safety needs without the structure of WSH. While Dr. Lima mentioned some incidents involving B.R.'s physical aggression that he did not personally witness,

the record is clear that Dr. Lima was very familiar with B.R. and had sufficient first-hand knowledge on which to form an opinion about B.R.

In the oral ruling, the commissioner cited to testimony from Dr. Lima; specifically, the commissioner referenced Dr. Lima's testimony regarding B.R.'s "responses to internal stimuli," "poor impulse control," "thought disorganization," "verbal and physical aggression," and "severe deterioration in his routine functioning . . . relative to [his] cognitive and volitional control." VRP (Sept. 10, 2021) at 30. Additionally, the commissioner noted that B.R. was "not medication compliant" and had "no insight into the fact that he has a behavioral health disorder." VRP (Sept. 10, 2021) at 30. Accordingly, the commissioner stated, "[B.R.] is not capable of making rational decisions regarding his treatment at Western State. He is no longer taking medication. He is no longer engaging with his treatment team or participating in groups. He has significantly decompensated since the Summer of 2020, when he was on the discharge list." VRP (Sept. 10, 2021) at 31. In the written 180-day commitment order, the commissioner incorporated much of the same testimony as cited in the oral ruling. Additionally, the commissioner wrote that B.R. "has had 5 admissions to WSH dating back to 2011," and "[s]ince June [B.R.] has had a further decline and increase in his symptoms." CP at 6.

Here, Dr. Lima's testimony about B.R.'s responding to internal stimuli and thought disorganization is evidence of B.R.'s significant loss of cognitive control. B.R.'s increasing aggression, both verbal and physical, is evidence of his significant loss of volitional control. Indeed, Dr. Lima described that his review of B.R.'s record in advance of the hearing revealed that B.R. had physically attacked WSH staff only a week before. Furthermore, B.R. refused to take medication and continued to insist he did not have a behavioral health disorder, despite his

worsening symptoms. This is in stark contrast to when B.R. took his prescribed medications and was on the discharge list in 2020.

Dr. Lima's testimony demonstrates a high probability that, if released and without the structure of WSH treatment, B.R. would not receive essential care for his health and safety. Moreover, the commissioner properly considered the fact that B.R. has had several admissions to WSH over the last decade, the most recent following the alleged assault on his father during which, the record suggests, B.R. was experiencing auditory hallucinations. *See* RCW 71.05.245; RCW 71.05.012. Therefore, we hold that there is substantial evidence upon which the superior court could have reasonably relied on to find by clear, cogent, and convincing evidence that B.R. is gravely disabled under prong (b).

C.     ADDITIONAL GROUNDS FOR COMMITMENT

Under RCW 71.05.280(3), an individual may be committed for treatment if the individual "has been determined to be incompetent and criminal charges have been dismissed pursuant to []RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts."

The 180-day commitment order references a secondary ground for B.R.'s involuntary commitment. The order states that "as a result of a behavioral health disorder[,B.R.] continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior." CP at 175. The State argues that if this court holds that the standard for gravely disabled was not met, the finding that B.R. presents a substantial likelihood of repeating acts similar to B.R.'s alleged assault on his father serves as independent grounds for commitment. B.R. briefly mentions this additional ground once in his statement of the case. However, B.R. does not assert that the

additional ground is not supported by substantial evidence in the argument section of his brief, let alone mention it at all within his argument. Because we do not consider arguments a party fails to brief, we do not address B.R.'s grounds for commitment under RCW 71.05.280(3). *See Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 876, 409 P.3d 160 (2018).

Substantial evidence supports the superior court's finding that B.R. is gravely disabled. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, P.J.

We concur:

_____
Veljacic, J.

_____
Price, J.