# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 56772-5-II |
| J.B., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — J.B. appeals the superior court's order committing him to 180 days' of involuntary treatment at Western State Hospital (WSH). J.B. argues that the superior court's finding that he is gravely disabled is not supported by substantial evidence. We affirm the superior court's order.

## FACTS

On January 24, 2022, the State filed a petition to commit J.B. for an additional 180 days' involuntary treatment. A hearing on the petition was held on February 24.

Dr. Elwyn Hulse, a psychologist at WSH, testified that he had been J.B.'s treating psychologist for two years. Dr. Hulse explained that J.B. was diagnosed with schizophrenia, continuous.[1] J.B. suffered from "extreme and profound and extended paranoid delusions," as well as "command hallucinations." Verbatim Rep. of Proc. (VRP) at 6.

Dr. Hulse described a paranoid delusion J.B. had been having for over five months where J.B. reports there is a psychiatrist at WSH that haunts him day and night. According to J.B., this

---

[1] According to Dr. Hulse, the term "continuous" means J.B. "doesn't have an acute phase. He doesn't have an episode with a beginning or an end. It's just kind of a long-term experience for him." Verbatim Rep. of Proc. (VRP) at 6.

psychiatrist came "in the middle of the night, and drugged me in my big toe. I couldn't talk." VRP at 10.

As to command hallucinations, Dr. Hulse described an incident where J.B., in experiencing an auditory hallucination, went to a female patient's room and asked to kiss her because he believed she had called him to come to her room. J.B. did not display any insight into his condition and had impaired judgment or impaired perception of reality.

Dr. Hulse also testified that J.B. was oriented to person and possibly time, but not place. Specifically, Dr. Hulse explained that J.B. believed WSH was a prison and he had done his time. J.B. did not understand that WSH was a hospital and that he was subject to civil commitment.

Dr. Hulse further testified that he did not believe that J.B., due to his behavioral health disorder, would be able to ensure his basic health and safety needs if he was released from WSH. Also due to his behavioral health disorder, J.B. had an extremely egocentric perspective which influenced all of his interactions. Dr. Hulse explained that J.B. had not been out of WSH since 1988 and J.B. would not be able to learn or adjust. Dr. Hulse opined that J.B.'s deficiencies would place him at risk of serious physical harm if he were to be released.

Dr. Hulse could not recommend a less restrictive alternative (LRA) for J.B. For an LRA to be considered, J.B. needs to cooperate with a pre-discharge assessment, and he has not cooperated. Also, J.B. has to agree to a 365-day LRA and placement in a group home, but J.B. has not agreed.

Although J.B. takes his medication willingly at WSH, J.B. did not recognize the need for medication, and Dr. Hulse did not believe J.B. would remain compliant with taking his medication if he was released. Further, J.B. was not capable of making rational decisions regarding his treatment. Dr. Hulse opined that J.B. "would not seek out or follow mental health advice, or any

2

kind of advice, in the community." VRP at 10. Further, J.B. refuses to engage in treatment at WSH. Dr. Hulse testified that in his opinion, as a result of J.B.'s behavioral health disorder, J.B. was gravely disabled.

J.B. testified that he wanted to be discharged so he could go live in Seattle near his brother. He planned on living at the YMCA when he was released. He also testified that he had financial resources available from trusts his family had set up for him.

The superior court found that J.B. continued to be gravely disabled. The superior court further found that J.B., "as a result of a behavioral health disorder is in danger of serious physical harm resulting from the failure to provide for his/her essential needs of health and safety" and "as a result of a behavioral health disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety." Clerk's Papers at 7. The superior court ordered J.B. committed to WSH for 180 days' involuntary treatment.

J.B. appeals.

## ANALYSIS

J.B. argues that the superior court's grave disability finding is not supported by substantial evidence. We disagree.

We review challenges to the sufficiency of the evidence in a light most favorable to the State. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459, *review denied*, 193 Wn.2d 1017 (2019). "When the standard is 'clear, cogent, and convincing . . . the findings must be supported by substantial evidence in light of the highly probable test.'" *Id*. (alteration in original) (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). We will not disturb the superior court's findings if those findings are supported by

substantial evidence which "the lower court could reasonably have found to be clear, cogent and convincing." *LaBelle*, 107 Wn.2d at 209.

Generally, a person may be "involuntarily committed for treatment of [behavioral health disorders] if, as a result of such disorders, they either (1) pose a substantial risk of harm to themselves, others, or the property of others, or (2) are gravely disabled." *Id*. at 202. The State has "[t]he burden of proving that a person is gravely disabled and in need of treatment . . . [and] the standard of proof is clear, cogent and convincing evidence." *Morris v. Blaker*, 118 Wn.2d 133, 137, 821 P.2d 482 (1992); RCW 71.05.310.

There are two alternative definitions of "gravely disabled," both of which provide a basis for involuntary commitment. *LaBelle*, 107 Wn.2d at 202. A gravely disabled person is one who

> as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(24).

A.    PRONG (a): DANGER OF SERIOUS PHYSICAL HARM FROM FAILURE TO PROVIDE FOR ESSENTIAL HEALTH AND SAFETY NEEDS

To prove grave disability under RCW 71.05.020(24)(a), the State must show an individual, "as a result of a [behavioral health disorder], is in danger of serious physical harm" from "his or her failure to provide for essential health and safety needs." *LaBelle*, 107 Wn.2d at 203. Evidence under this prong includes "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *Id*. at 204-05.

Here, the State presented substantial evidence to show that J.B. was gravely disabled under prong (a) of RCW 71.05.020(24). There was evidence that J.B. would not be able to provide for his essential needs of safety because J.B.'s hallucinations and extreme egocentricity influenced all of his interactions with other people. Further, there was evidence that J.B. would not be able to provide for his essential needs such as food, clothing, or shelter because his behavioral health disorder prevented him from being able to effectively adjust to the changes from 1988 to the present. Finally, because J.B. lacked insight and judgment in seeking treatment for his condition and because he had not actually engaged in any treatment, there is a high probability that J.B. would not be able to provide for his essential need for medical treatment.

The evidence was sufficient to show it was highly probable that J.B. would be unable to provide for his essential needs as a result of his behavioral health disorder. Therefore, the superior court's conclusion that J.B. was gravely disabled under RCW 71.05.020(24)(a) was supported by substantial evidence.

B.      PRONG (b): SEVERE MENTAL DETERIORATION IN ROUTINE FUNCTIONING

Proving grave disability under RCW 71.05.020(24)(b) includes two requirements: the State must show that an individual manifests severe mental deterioration in routine functioning and the individual is not receiving essential care for his or her health and safety. *LaBelle*, 107 Wn.2d at 205. Evidence proving prong (b)

> must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety. It is not enough to show that care and treatment of an individual's mental illness would be preferred or beneficial or even in his best interests. To justify commitment, such care must be shown to be *essential* to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered.

5

*Id*. at 208 (emphasis in original). Further, the individual must be unable to make rational decisions regarding his or her treatment. *Id*.

Here, the State presented evidence of recent loss of cognitive or volitional control based on the incident in which J.B. entered another patient's room for a kiss based on the hallucination that the patient had called him and based on J.B.'s consistent paranoid delusion regarding the psychiatrist haunting him. Also, there was evidence that J.B. would not receive essential medical care because he lacked insight and judgment into his condition. Further, Dr. Hulse opined that J.B. was not capable of making rational decisions regarding treatment and that J.B. "would not seek out or follow mental health advice, or any kind of advice, in the community." VRP at 10. J.B. also refused to engage in treatment or discharge planning that would allow him to ensure that he would receive essential care if released.

The evidence was sufficient to show that it was highly probable that J.B. exhibited a deterioration in routine functioning and would not receive essential medical care if released. Therefore, the superior court's conclusion that J.B. was gravely disabled under RCW 71.05.020(24)(b) was supported by substantial evidence.

## CONCLUSION

Substantial evidence in the record supports the superior court's conclusion that J.B. was gravely disabled under RCW 71.05.020(24)(a) and )(b). Accordingly, we affirm.

No. 56772-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Price, J.